

**EWC FRANCHISE GROUP, INC.**

**AREA REPRESENTATIVE AGREEMENT**

**DOC DEVELOPMENT, LLC**

**EWC-0001**

## TABLE OF CONTENTS

Page

1.   DEFINITIONS ................................................................................................ 2

2.   GRANT OF AREA REPRESENTATIVE FRANCHISE ............................. 4
     2.1   Appointment ...................................................................................... 4
     2.2   Territory ............................................................................................. 4

3.   FEES AND PAYMENTS ............................................................................... 5
     3.1   License Fee ........................................................................................ 5
     3.2   Area Representative Commission ..................................................... 5
     3.3   Referral Fee ....................................................................................... 7

4.   FRANCHISEE DEVELOPMENT ................................................................ 7
     4.1   Development Schedule ...................................................................... 7
     4.2   Reasonableness of Development Schedule ....................................... 8

5.   TERM AND RENEWAL ............................................................................... 9
     5.1   Initial Term ....................................................................................... 9
     5.2   Successor Franchise Agreement ....................................................... 9

6.   TRAINING AND OPERATING ASSISTANCE ........................................ 10
     6.1   Initial Training ................................................................................ 10
     6.2   Telephone Assistance; Email Accounts .......................................... 10
     6.3   Operations Assistance ..................................................................... 10
     6.4   Ongoing Training ............................................................................ 11
     6.5   Substitution of Trainers .................................................................. 11

7.   CONFIDENTIAL OPERATIONS MANUAL .............................................. 11
     7.1   Loan of Confidential Operations Manual ....................................... 11
     7.2   Revisions to the Confidential Operations Manual .......................... 11
     7.3   Confidentiality of Confidential Operations Manual ....................... 12

8.   AREA REPRESENTATIVE'S OBLIGATIONS ......................................... 12
     8.1   Office Premises ............................................................................... 12
     8.2   Development of Disclosure Document ............................................ 13
     8.3   Amendment of Disclosure Document, Contracts and Permits ....... 13
     8.4   Equipment and Supplies .................................................................. 14
     8.5   Franchisee Solicitation ................................................................... 15

EWC-0002

**TABLE OF CONTENTS**
(continued)

Page

| | 8.6 | Area Representative's Obligations to Franchisees | 15 |
| | 8.7 | Compliance with Good Business Practices | 17 |
| | 8.8 | Legal Compliance | 17 |
| | 8.9 | Review of Materials | 18 |
| | 8.10 | Full-Time Commitment | 18 |
| | 8.11 | Monthly Franchise Solicitation Advertising | 18 |
| | 8.12 | Marketing and Advertising Responsibility | 18 |
| | 8.13 | Computer | 18 |
| | 8.14 | Right to Inspect | 19 |
| | 8.15 | Release of Records | 19 |
| 9. | | AREA REPRESENTATIVE SHALL COMPLY WITH FRANCHISOR'S STANDARDS OF OPERATION | 19 |
| | 9.1 | Area Representative Shall Use and Promote Only Authorized Products and Services and Purchase from Approved Suppliers | 19 |
| | 9.2 | Area Representative Shall Only Purchase from Suppliers Approved by Franchisor | 20 |
| | 9.3 | Appearance and Condition of the Area Representative Business | 21 |
| | 9.4 | Hours of Operation of the Area Representative Business | 21 |
| | 9.5 | Contributions and Donations | 21 |
| | 9.6 | Area Representative Shall Secure All Necessary Licenses and Permits | 21 |
| | 9.7 | Franchisor Shall Provide Area Representative Notification of All Proceedings Against Area Representative | 22 |
| | 9.8 | Area Representative Shall Comply with Good Business Practices | 22 |
| | 9.9 | Area Representative Shall Comply with Franchisor's Uniform Requirements | 22 |
| | 9.10 | Email | 22 |
| 10. | | USE OF SYSTEM, MARKS, TRADE SECRETS AND OTHER CONFIDENTIAL INFORMATION | 22 |
| | 10.1 | Ownership of Marks | 22 |
| | 10.2 | Limitations on Area Representative's Use of the Marks | 23 |
| | 10.3 | Notification of Infringements of the Marks; Claims Against the Marks | 23 |
| | 10.4 | Franchisor's Indemnification for Area Representative's Use of Marks | 23 |

-ii-

EWC-0003

**TABLE OF CONTENTS**
(continued)

Page

|  | 10.5 | Area Representative's Discontinuance of Use of the Marks | 24 |
|  | 10.6 | Franchisor's Right to Inspect Area Representative's Use of the Marks | 24 |
|  | 10.7 | Franchisor's Sole Right to Domain Name | 24 |
|  | 10.8 | System Modifications | 25 |
|  | 10.9 | Requirement of Confidentiality | 25 |
|  | 10.10 | Franchisor Owns All Additional Developments | 26 |
| 11. |  | RELATIONSHIP OF FRANCHISOR AND AREA REPRESENTATIVE AND INDEMNIFICATION | 26 |
|  | 11.1 | Description of Relationship of Franchisor and Area Representative | 26 |
|  | 11.2 | Franchisor May Act in its Own Interest | 27 |
|  | 11.3 | Indemnification by Area Representative | 27 |
|  | 11.4 | Franchisor's Right to Retain Counsel | 27 |
| 12. |  | INSURANCE REQUIREMENTS | 28 |
|  | 12.1 | Types and Amounts of Coverage Required by Area Representative | 28 |
|  | 12.2 | Franchisor May Increase Future Requirements | 29 |
|  | 12.3 | Carrier Standards for Area Representative's Insurance | 29 |
|  | 12.4 | Area Representative Shall Provide Franchisor Evidence of Area Representative's Insurance Coverage | 29 |
|  | 12.5 | Area Representative's Failure to Maintain Insurance Coverage | 29 |
| 13. |  | TRANSFERABILITY OF INTEREST | 29 |
|  | 13.1 | Transfer by Franchisor | 29 |
|  | 13.2 | Transfer by Area Representative | 30 |
|  | 13.3 | Restriction on Transfer by Area Representative to a Controlled Entity | 31 |
|  | 13.4 | Franchisor's Disclosure to Transferee | 32 |
|  | 13.5 | Transfer by Death or Incapacity | 33 |
| 14. |  | Franchisor's Right of First Refusal | 33 |
|  | 14.1 | Submission of Offer | 33 |
|  | 14.2 | Sale or Transfer to Family Members | 33 |
|  | 14.3 | Franchisor's Right to Purchase | 34 |
|  | 14.4 | Non Exercise of Right of First Refusal | 34 |
| 15. |  | RESTRICTIONS CONCERNING COMPETITIVE BUSINESSES | 34 |

-iii-

## TABLE OF CONTENTS
(continued)

Page

15.1 No Competition with Franchisor ........................................................................ 34

15.2 Designated Individuals Shall Enter Into Nondisclosure and Non-Competition Agreements ........................................................................ 35

15.3 Area Representative Acknowledges Reasonableness of Restrictions ................. 35

15.4 Relief for Breaches of Confidentiality, Non-Solicitation and Non-Competition ........................................................................ 35

16. TERMINATION ........................................................................ 36

16.1 By Area Representative ........................................................................ 36

16.2 By Franchisor ........................................................................ 36

16.3 Termination of Fees and Commission ........................................................................ 38

16.4 Conflicting State Law ........................................................................ 38

17. RIGHTS AND DUTIES  UPON EXPIRATION OR TERMINATION ........................ 38

17.1 Area Representative's Post-Term Obligations ........................................................ 38

17.2 Area Representative Shall Not Unfairly Compete with Franchisor ..................... 39

17.3 Franchisor's Option to Purchase Certain Business Assets ................................. 40

17.4 Survival of Certain Provisions of this Agreement Following Termination or Expiration ........................................................................ 40

18. ADDRESSES AND PROCEDURES FOR SENDING COMMUNICATIONS ............ 40

19. UNLIMITED GUARANTY AND ASSUMPTION OF OBLIGATIONS ..................... 41

20. APPROVALS ........................................................................ 41

21. ENTIRE AGREEMENT ........................................................................ 41

22. GENERAL CONDITIONS AND PROCEDURES ........................................................ 41

22.1 Choice of Law ........................................................................ 41

22.2 Consent to Jurisdiction ........................................................................ 42

22.3 Cumulative Rights and Remedies ........................................................................ 42

22.4 Limitation of Claims ........................................................................ 42

22.5 Limitation of Damages ........................................................................ 42

22.6 Waiver of Jury Trial ........................................................................ 43

22.7 Arbitration ........................................................................ 43

22.8 Force Majeure ........................................................................ 43

22.9 Timing Is Of The Essence ........................................................................ 43

-iv-

EWC-0005

## TABLE OF CONTENTS
(continued)

**Page**

22.10  Withholding Payments ................................................................ 43

22.11  Further Assurances ................................................................... 44

22.12  Third-Party Beneficiaries ........................................................ 44

23.  REMEDIES IN THE EVENT OF BREACH OF THIS AGREEMENT ....................... 44

24.  SEVERABILITY AND CONSTRUCTION ............................................... 44

24.1  Severability ........................................................................... 44

24.2  Successors ............................................................................. 45

24.3  Headings ............................................................................... 45

25.  THIS AGREEMENT MAY BE SIGNED IN ONE OR MORE COUNTERPARTS ................................................................. 45

26.  ACKNOWLEDGMENTS ................................................................. 45

26.1  Receipt of this Agreement and the Franchise Disclosure Document ................ 45

26.2  Consultation by Area Representative ........................................... 45

26.3  True and Accurate Information .................................................. 45

26.4  Risk ...................................................................................... 46

26.5  No Guarantee of Success ......................................................... 46

26.6  No Violation of Other Agreements ............................................. 46

## EXHIBITS

1.  GENERAL RELEASE
2.  NONDISCLOSURE AND NON-COMPETITION AGREEMENT
3.  UNLIMITED GUARANTY AND ASSUMPTION OF OBLIGATIONS
4.  HOLDERS OF LEGAL OR BENEFICIAL INTEREST

EWC-0006

# EWC FRANCHISE GROUP, INC.

## AREA REPRESENTATIVE AGREEMENT

This Area Representative Agreement (this "Agreement"), is entered into and made effective this 24th day of March, 2010, by and between EWC Franchise Group, Inc., a Florida corporation, having its principal place of business at 3023 Aventura Blvd., Aventura, Florida 33180 ("Franchisor"), and DOC DEVELOPMENT, LLC, a Texas limited liability company ("Area Representative").

## RECITALS

Franchisor and its Affiliate[*] have developed, and are in the process of further developing, a System identified by the service mark "EUROPEAN WAX CENTER®" and which relates to the establishment and operation of a business that provides hair removal services, referred to in this Agreement as "European Wax Centers;" and

"European Wax Center®" uses this and certain other Marks along with certain practices that include uniform standards and procedures for efficient business operations; procedures and strategies for marketing, advertising and promotion; customer service and development techniques; distinctive interior and exterior design, layout and décor; other strategies, techniques, Trade Secrets and other Confidential Information, the Confidential Operations Manual; and

Franchisor and its Affiliates have developed, and are in the process of further developing, an area representative business in which Franchisor grants Area Representatives the right to provide Support Services consistent with this Agreement and the System; and

Area Representative agrees that Franchisor enters into this Agreement in reliance on Area Representative's agreement to conduct itself and its business at all times in a manner that is legal and ethical under laws governing this Agreement, including the Federal Trade Commission's Franchise Rule and appurtenant state laws and regulations, and on the promise that its conduct will not to exceed the scope permitted under this Agreement or the Confidential Operations Manual;

Area Representative agrees that Franchisor enters into this Agreement in reliance on Area Representative's agreement to operate free of breaches to any franchise agreements Area Representative may enter into with Franchisor; and

Area Representative understands and acknowledges the importance of Franchisor's high and uniform standards of quality, operations and service and the necessity of operating the Area Representative Business in strict conformity with Franchisor's standards and specifications.

THEREFORE, Franchisor and Area Representative, intending to be legally bound agree to all the foregoing and the terms below which, with all the pertinent attachments incorporated by reference, shall comprise the full understanding of the parties to this Agreement.

---

[*] Capitalized terms not otherwise defined are defined in Section 1.

1

1. **DEFINITIONS**

Whenever used in this Agreement, the following words and terms have the following meanings:

"**Affiliate**" means any business entity that controls, is controlled by, or is under common control with Franchisor;

"**Agreement**" means this agreement entitled "EWC Franchise Group, Inc. Area Representative Agreement" and all instruments supplemental hereto or in amendment or confirmation hereof;

"**Area Representative**" means the Person or entity defined as "Area Representative" in the introductory paragraph of this Agreement;

"**Area Representative Business**" means the business carried on by Area Representative within the "Territory" in accordance with the terms of this Agreement;

"**Commission**" any fees or remuneration owed by Franchisor to Area Representative for its undertaking under this Agreement and that are not otherwise specifically defined herein, less any past due amount Area Representative may owe to Franchisor;

"**Competitive Business**" means any business that, directly or indirectly, offers products or services the same as or similar to those provided by European Wax Centers, or in which Trade Secrets and other Confidential Information could be used to the disadvantage of Franchisor, any Affiliate or its franchisees. "Competitive Business" excludes (a) any business operated by a Franchisee under a Franchise Agreement with Franchisor, (b) any business operated by Area Representative under a Area Representative Agreement, or (c) any business operated by a publicly-held entity in which Area Representative owns less than a five percent (5%) legal or beneficial interest;

"**Confidential Information**" means technical and non-technical information used in or related to European Wax Centers that is not commonly known by or available to the public, including, without limitation, Trade Secrets and information contained in the Confidential Operations Manual and training guides and materials. In addition, any other information identified as confidential when delivered by Franchisor shall be deemed Confidential Information. Confidential Information shall not include, however, any information that: (a) is now or subsequently becomes generally available to the public through no fault of Area Representative; (b) Area Representative can demonstrate was rightfully in its possession, without obligation of nondisclosure, prior to disclosure pursuant to this Agreement; (c) is independently developed without the use of any Confidential Information; or (d) is rightfully obtained from a third party who has the right, without obligation of nondisclosure, to transfer or disclose such information;

"**Confidential Operations Manual**" means the European Wax Center Confidential Operations Manual in any written format that Franchisor may provide, including modifications and revisions made over time, and which contains or describe the standards, methods, procedures of the System, including advertising and marketing promotions, other operations, administration

2

and managers' manuals and all books, computer programs, password-protected portions of an Internet site, pamphlets, memoranda and other publications prepared by, or on behalf of, Franchisor;

**"Development Schedule"** is the chart in Section 4.1 that sets forth the schedule for the number of Franchised Centers to open and be in continuous operation in the Territory during the term of this Agreement;

**"Disclosure Document"** is an abbreviation for the Franchise Disclosure Document, which is defined below;

**"Franchise Agreement"** means the franchise agreement entered into by Franchisor and a Franchisee for the operation of a Franchised Center;

**"Franchised Center"** means a license to operate a European Wax Center Franchisor grants to a Franchisee under a Franchise Agreement;

**"Franchise Disclosure Document (or Disclosure Document)"** means the written and/or electronic document produced to comply with the laws and regulatory schemes of all the various states and federal government that govern pre-sale franchise activities and ongoing compliance requirements, including compliance under the current Franchise Rule.

**"Franchisee"** means a Person that operates a Franchised Center pursuant to a Franchise Agreement;

**"Franchise Rule"** means the Federal Trade Commission's Disclosure Requirements and Prohibitions Concerning Franchising and Business Opportunity Ventures;

**"Franchisee Solicitation"** is defined in Section 8.5;

**"Franchisor"** means EWC Franchise Group, Inc.;

**"Franchisor Indemnitees"** is defined in Section 11.3;

**"License Fee"** is defined in Section 3.1;

**"Marks"** means the trademarks "European Wax Center$^{®}$," and such other trade names, trademarks, service marks, trade dress, designs, graphics, logos, emblems, insignia, fascia, slogans, drawings and other commercial symbols as Franchisor may designate to be used in connection with European Wax Centers and the Area Representative Business;

**"Person"** means a human being, a legal or business entity devised or constructed by for the purpose of carrying out business activities under the name of such devised or constructed entity, which shall not be limited to sole proprietorships, corporations, partnerships, limited liability companies, or other entities; and in the case of entities, a Person shall include, any other entity with a majority or controlling interest in another entity, as well as the individual officers, directors, and other persons controlling the activities of such entity;

EWC-0009

**"Premises"** is defined in Section 8.1 of this Agreement;

**"Referral Fee"** is a fee paid to a person who refers a prospective franchisee who signs a Franchise Agreement, is approved by Franchisor to operate a Franchised Center, and pays a franchise fee based on the Franchise Agreement;

**"Support Services"** means services the Area Representative performs for Franchisor in the Territory as specified in this Agreement and as may be articulated in materials referenced in this Agreement, and which services include Franchisee Solicitation, providing initial and ongoing training and operations assistance, providing ongoing support and conducting periodic quality assurance visits with existing franchisees in the Territory;

**"System"** means the uniform standards, methods, procedures and specifications, revisions or modifications Franchisor advances for the operation of a European Wax Center;

**"Territory"** means the area Franchisor grants to Area Representative as described in Section 2.2 of this Agreement; and

**"Trade Secret"** means information in any form (including, but not limited to, technical or non-technical data, formulas, patterns, compilations, programs, devices, methods, techniques, drawings, processes, financial data, financial plans, product plans, passwords, lists of actual or potential customers or suppliers) related to or used in European Wax Centers that  is not commonly known by or available to the public and that information: (a) derives economic value, actual or potential, from not being generally known to, and not being readily ascertained by proper means by, other persons who can obtain economic value from its disclosure or use; and (b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

## 2. GRANT OF AREA REPRESENTATIVE FRANCHISE

### 2.1 Appointment

Franchisor grants to Area Representative a license to identify and solicit Franchisees within the Territory and to provide Support Services to Franchised Centers located within the Territory subject to the terms and conditions of this Agreement.

### 2.2 Territory

The Territory of the Area Representative granted shall be defined by the following: See **Schedule 1** attached hereto.

During the term of this Agreement, provided Area Representative complies with the Development Schedule and is not in breach of this Agreement, Franchisor will not establish nor license any other Area Representatives to perform Franchisee Solicitation for prospective Franchisees within the Territory or provide Support Services to Franchisees within the Territory; provided, however, Franchisor retains the right:

2.2.1        to identify and solicit prospective Franchisees, at any location inside and outside of the Territory, as Franchisor, in its sole discretion, deems appropriate, provided

4

that Franchisor shall refer all prospective Franchisees within the Territory to Area Representative and Area Representative will provide Support Services to such prospective Franchisees;

2.2.2    to establish additional Area Representatives outside of the Territory as Franchisor deems appropriate in its sole discretion;

2.2.3    to open European Wax Centers owned by us or our affiliates within your Territory (for which Area Representative will be compensated in accordance with the terms of this Agreement; provided, however, Area Representative will not receive any portion of the initial license fee paid by us or our affiliates, if any); and

2.2.4    to engage in any activities not otherwise forbidden under the terms of this Agreement.

## 3.    FEES AND PAYMENTS

### 3.1    License Fee

As consideration for the license granted in this Agreement, Area Representative shall pay to Franchisor, upon execution of this Agreement, an initial Area Representative fee of ONE HUNDRED SIXTY FIVE THOUSAND DOLLARS ($165,000.00) ("License Fee") for a license for the rights as an Area Representative for the Territory. ONE HUNDRED TWENTY THOUSAND DOLLARS ($120,000) of the License Fee shall be paid upon the execution of this Agreement. The remaining FORTY FIVE THOUSAND DOLLARS ($45,000.00) shall be paid in accordance with the terms of that certain Promissory Note, dated as of _____, 2010, by Area Representative in favor Franchisor.

The License Fee is fully earned and nonrefundable for the granting of the rights as an Area Representative for the Territory, as specified in this Agreement.

As an Area Representative, Area Representative qualifies to operate one (1) individual Franchised Center within the Territory pursuant to the terms and conditions of a separate Franchise Agreement. Franchisor waives the franchise fee for this one (1) Franchised Center.

### 3.2    Area Representative Commission

3.2.1    During the term of this Agreement, Franchisor shall pay Area Representative a Commission equal to fifty percent (50%) of the initial franchise fee paid to Franchisor for the purchase of a Franchised Center to be located within the Territory (including any Franchisee in the Territory solicited by Franchisor), minus any Referral Fee(s) paid by Franchisor to other area representatives or to other parties in connection with such sale(s). The payment of the Commission is subject to the fulfillment of the following conditions:

3.2.1.1    Franchisee executes a Franchise Agreement with Franchisor, and an initial franchise fee has been fully paid to and received in full by Franchisor. The franchise fee is not deemed received until it is fully remitted to Franchisor in cases where the franchise fee is held in escrow;

EWC-0011

3.2.1.2    The sale for which the initial franchise fee has been paid is not a resale of any existing Franchised Center or any interest in such a business; and

3.2.1.3    Area Representative has complied with all of its other obligations under this Agreement with respect to such sale and has verified the same to Franchisor in writing in a form prescribed by Franchisor; provided, however, that Area Representative shall not be entitled to any commission with respect to any Franchises established in the Territory in connection with which Area Representative failed to perform the required Support Services.

3.2.2    The amount payable to Area Representative pursuant to Section 3.2.1 will be paid, within ten (10) business days of the completion of the conditions set forth in Sections 3.2.1.

3.2.3    During the term of this Agreement, Franchisor shall pay to Area Representative, within ten (10) business days of Franchisor's receipt of the Transfer Fee (as such term is defined in the applicable Franchise Agreement) fifty percent (50%) of the Transfer Fee paid to Franchisor by the Franchisee or the transferee in connection with a Franchised Center being transferred within the Territory, provided Area Representative provided Support Services culminating in the transfer of the Franchised Center. Franchisor shall notify Area Representative of any pending transfer and Area Representative shall have the opportunity to provide Support Services related to such pending transfer.

3.2.4    During the term of this Agreement, Franchisor shall pay to Area Representative, within ten (10) days after the end of each period determined by Franchisor, 2.25% of the Gross Sales of each Franchisee within the Territory for which the Area Representative provided Support Services during the applicable period; provided, however that such amounts shall only be payable to Area Representative for Franchisees that are current in their payment of Royalty Fees (as defined in the Franchise Agreement) to Franchisor.

3.2.4.1    As used in this Section 3.2.4, "Gross Sales" shall mean Gross Sales as defined in the applicable Franchise Agreement, except, for purposes of this Agreement, the definition of Gross Sales shall not exclude proceeds Franchisee receives from the re-sale of pre-packaged products or branded goods that Franchisee purchases from Franchisor or its affiliates (e.g. European Wax Center bath and body products and European Wax Center branded clothing).

3.2.4.2    For purposes of clarity, Franchisor shall also pay 2.25% of the Gross Sales of each European Wax Centers located in the Territory owned by Franchisor or its Affiliates for which the Area Representative provides Support Services during the applicable period.   Area Representative shall not be paid any portion of the initial franchise fee for European Wax Centers located in the Territory owned by Franchisor or its Affiliates.

3.2.5    Area Representative shall not receive Commission, any fees or remunerations for which Area Representative may be entitled if Area Representative fails to carry out any of its material obligations under this Agreement. These obligations shall include, but shall not be limited to, providing Support Services, conducting periodic inspections, filing

6

written reports Franchisor may require in this Agreement or in the Confidential Operations Manual, successfully completing the initial training program for new franchises or transferees in the Territory.

3.2.6     Area Representative shall not receive Commission on any Royalty Fees paid by any other European Wax Centers in the territory of another area representative.

3.2.7     All Commissions owed under this Agreement shall immediately and permanently cease after the expiration or termination of the term of this Agreement, although Area Representative shall receive all amounts which have accrued as of the effective date of expiration or termination of the term of this Agreement.

3.2.8     Franchisor's payments of Commissions or an other amounts pursuant to Section 3.2 to Area Representative shall be based on amounts paid and actually received from Franchisees, not on uncollected payments accrued, due, or owing. From time to time, Franchisor may increase or decrease the amount of fees payable by Franchisees, even if such changes could affect commission or other payments due to Area Representative. Nothing in this Agreement prevents Franchisor from increasing or decreasing the amount of fees payable by Franchisees, including, without limitation, Royalty Fees and the initial franchise fees. In the event of termination of a Franchise Agreement for a Franchised Center within the Territory under circumstances entitling Franchisee to the return of all or part of the initial franchise fee or other fees (or in the event that Franchisor becomes legally obligated or decides to return part or all of the initial franchise fee or other fees pay by a Franchisee), Area Representative shall not be compensated based on the amount of any returned fees to such Franchisee and, if such amounts were previously paid to Area Representative, Area Representative shall promptly repay such amounts to Franchisor.

3.2.9     During the term of this Agreement, Franchisor shall notify Area Representative of each prospective Franchisee in the Territory, and, provided Area Representative is not in breach of this Agreement, shall refer such prospect to Area Representative for the provision of Support Services prior to entering into a Franchise Agreement with such prospective Franchisee.

### 3.3     Referral Fee

During the term of this Agreement, Franchisor shall pay to Area Representative a Referral Fee equal to five percent (5%) of the initial franchise fee (less the amount of such initial franchise fee paid by Franchisor to any other party being compensated for such referral, including, without limitation, another area representative, as a Referral Fee), paid by a Franchisee referred by Area Representative for a Franchised Center located outside of the Territory.

### 4.     FRANCHISEE DEVELOPMENT

#### 4.1     Development Schedule

4.1.1     The Area Representative acknowledges and agrees that a material provision of this Agreement is that the following number of Franchised Centers must be opened

7

and continuously operating in the Territory during the term of this Agreement in accordance with the following Development Schedule:

| Year | Number of Franchises Required to be Opened and Continuously Operating for Business in the Territory during the Year | Cumulative Number of Franchises Required to be Opened and Continuously Operating for Business in the Territory |
|---|---|---|
| 1 | 2 | 2 |
| 2 | 2 | 4 |
| 3 | 2 | 6 |
| 4 | 2 | 8 |
| 5 | 2 | 10 |

4.1.2       For purpose of this Section of this Agreement, a year is measured by the twelve (12) consecutive months that follows the execution of this Agreement or the anniversary of its execution.

4.1.3       Franchisor reserves the right to require Area Representative to hire a reasonable number of personnel to its staff relative to its ability to provide adequate Support Services to Franchisees.  Franchisor may take various factors into consideration in reaching a decision on whether Area Representative is able to provide adequate Support Services, including, the number of prospective Franchisees within the Territory, the number of opened Franchised Centers, the gravity or frequency of complaints by Franchisees in the Territory and the gravity or frequency of complaints of customers in the Territory, signed Franchise Agreements within the Territory.

**4.2      Reasonableness of Development Schedule**

The Area Representative represents that it has conducted its own independent investigation and analysis of the prospects for the establishment of European Wax Center franchises in the Territory and agrees that the Development Schedule is reasonable and viable. Area Representative agrees that failure to achieve the results described in the foregoing Development Schedule constitutes a material breach of this Agreement and, in that event, Franchisor shall have the right to terminate the term of this Agreement.  Termination of the term of this Agreement as a result of the Area Representative's failure to meet the Development Schedule shall not affect Area Representative's operating of European Wax Center franchises in the Territory.  Upon termination, all rights to provide Support Services granted to Area Representative under this Agreement shall revert to Franchisor.

EWC-0014

## 5.    TERM AND RENEWAL

### 5.1    Initial Term

The term of this Agreement shall be effective and binding from the date of its execution, and the term of this Agreement shall continue for ten (10) years thereafter, unless sooner terminated as provided in this Agreement.

### 5.2    Successor Franchise Agreement

At the end of the initial ten (10) year term of this Agreement, Area Representative may acquire a successor franchise for one (1) additional successive term of ten (10) years, such that the total term shall not exceed twenty (20) years.  To qualify for a successor franchise, each of the following conditions shall have been fulfilled and remain true as of the last day of the term of this Agreement.

5.2.1    Area Representative executes the then-current form of Area Representative Agreement as offered to new franchisees, or if Franchisor has ceased offering franchises, to renewing franchisees generally, which agreement may contain terms materially different from those in this Agreement; provided that Area Representative shall not be required to pay a new License Fee and the Territory will not be altered;

5.2.2    Area Representative has given Franchisor written notice of its election to acquire a successor franchise not less than six (6) months nor more than twelve (12) months prior to the end of the then-current term;

5.2.3    Area Representative has complied with all provisions of this Agreement, including the Development Schedule in Section 4.1 during the then current term;

5.2.4    Area Representative is not in breach or under notification of breach of this Agreement or any other agreement between Area Representative and Franchisor at the time it gives notice of intent to renew;

5.2.5    Area Representative executes a general release, in a form the same as or similar to the General Release attached as Exhibit 1, of any and all claims against Franchisor and its Affiliates, and their respective shareholders, members, officers, directors, employees, and agents, arising out of or relating to this Agreement; and

5.2.6    Area Representative and Franchisor have agreed on a new Development Schedule to succeed the Development Schedule in effect during the preceding term; provided the Territory is not fully developed, as determined by Franchisor in its sole discretion.

EWC-0015

6.      **TRAINING AND OPERATING ASSISTANCE**

6.1      **Initial Training**

At no additional charge, Franchisor shall make an initial training program available to Area Representative and one (1) additional assistant. If Area Representative is a corporation, limited liability company or partnership, then training shall consist of up to three (3) of its owner-operators each with at least a fifteen percent (15%) ownership interest or a designated manager. Prior to beginning operations, Area Representative (or the owner-operator, designated manager) must attend and successfully complete, to Franchisor's satisfaction, an initial training program.  Area Representative or its designated manager must attend and satisfactorily complete the initial training program within sixty (60) days of the signing of this Agreement. The initial training program shall cover various aspects concerning the operation of the Area Representative Business including, but not limited to, sales and marketing methods; financial controls, maintenance of quality standards, assistance to Franchisees, record keeping and reporting procedures and other operational issues. Area Representative is solely responsible for all costs related to the attendance of Area Representative and its personnel at the initial training program.  The costs associated with attending training are not limited to, but may include travel costs, lodging, meals and salaries. Franchisor may impose a surcharge for any additional training Area Representative causes Franchisor to provide to Area Representative's personnel.

6.2      **Telephone Assistance; Email Accounts**

At no charge to Area Representative, Franchisor will maintain a telephone line which Area Representative may use to contact Franchisor in connection with the Area Representative Business.

Franchisor will provide Area Representative five (5) free email accounts for Area Representative to use to communicate to us and our Franchisees in the territory.  Area Representative shall pay Franchisor $5.00 per month for each additional email account requested by Area Representative.

6.3      **Operations Assistance**

Franchisor or Franchisor's representative shall make periodic visits, which may be announced or unannounced, to the Area Representative Business for the purposes of consultation, assistance and guidance with respect to operation and management of the Area Representative Business.  Franchisor and Franchisor's representatives who visit the Area Representative Business may prepare, for the benefit of both Franchisor and Area Representative, written reports detailing issues or concerns discovered during any such visit and outlining any required or suggested changes or improvements in the operations of the Area Representative Business.  A copy of any such written report will be provided to Area Representative. Area Representative shall implement any required changes or improvements as required by Franchisor with time being of the essence.

EWC-0016

### 6.4     Ongoing Training

Franchisor may provide and may require that Area Representatives, at the Area Representative's cost, successfully complete refresher training programs or seminars including, without limitation, national and regional conventions and meetings. Franchisor shall not require attendance at more than two (2) sessions exceeding three (3) days in any calendar year.

### 6.5     Substitution of Trainers

Franchisor may, at its discretion, substitute any person designated to provide training at any training program commissioned and required by Franchisor with a trainer similarly qualified to provide the training.

## 7.     CONFIDENTIAL OPERATIONS MANUAL

### 7.1     Loan of Confidential Operations Manual

During the term of this Agreement, Franchisor shall loan one (1) copy of the Confidential Operations Manual or grant access to an electronic copy of the Confidential Operations Manual to Area Representative.   Area Representative shall conduct the Area Representative Business in strict accordance with the provisions set forth in the Confidential Operations Manual, and shall provide Support Services consistent with it and any other manuals Franchisor may furnish relating to the Franchise.  The Confidential Operations Manual may consist of one (1) or more separate manuals and other materials as designated by Franchisor and may be in written or electronic form.  Franchisor owns the copyrights in the Confidential Operations Manual and Area Representative shall not copy or duplicate the Confidential Operations Manual in whole or in part.  The Confidential Operations Manual shall, at all times, remain the sole property of Franchisor and shall promptly be returned to Franchisor upon expiration or termination of the term of this Agreement.  If the Confidential Operations Manual is lost or destroyed, Franchisor shall supply a replacement Confidential Operations Manual at cost to Area Representative.

### 7.2     Revisions to the Confidential Operations Manual

7.2.1     Franchisor has the right to add to or otherwise modify the Confidential Operations Manual from time to time to reflect changes in the specifications, standards, operating procedures and rules prescribed by Franchisor; provided, however, that no such addition or modification shall materially alter the rights of Area Representative under this Agreement.  Franchisor may make such additions or modifications without prior notice to Area Representative.  Area Representative shall immediately, upon notice, adopt any such changes and shall ensure that its copy of the Confidential Operations Manual is up-to-date at all times.

7.2.2     At Franchisor's option, Franchisor may post some or all of the Confidential Operations Manual on a restricted Web site, intranet, or extranet to which Area Representative shall have access.   For purposes of this Agreement, "Web site" means an interactive electronic document contained in a network of computers linked by communications software, including, without limitation, the Internet and World Wide Web home pages.  By signing this Agreement, Area Representative agrees to monitor and access the Web site, intranet,

EWC-0017

or extranet for updates that Franchisor may make to the Confidential Operations Manual over time. Any password or other digital identification necessary to access the Confidential Operations Manual on a Web site, intranet or extranet will be deemed to be Franchisor's proprietary information, subject to Section 7.1 above.

7.2.3    If a dispute as to the contents of the Confidential Operations Manual arises, the terms of the master copy of the Confidential Operations Manual maintained by Franchisor at Franchisor's headquarters shall be controlling.

### 7.3    Confidentiality of Confidential Operations Manual

The Confidential Operations Manual contains Franchisor's Trade Secrets and other Confidential Information and shall be kept confidential by Area Representative. Area Representative shall at all times ensure that its copy of the Confidential Operations Manual is available at the principal place of business of the Area Representative Business, and is at all times current and up-to-date. If in paper form or stored on computer-readable media, Area Representative shall maintain the Confidential Operations Manual in a locked receptacle at the aforementioned place of business, or if in electronic form, Area Representative shall maintain the Confidential Operations Manual in a password-protected file. Area Representative shall only grant authorized personnel, as defined in the Confidential Operations Manual, access to the key or combination of such receptacle or the password to such file (or Internet site, if the Confidential Operations Manual is maintained online by Franchisor in a password-protected site). Area Representative shall not disclose, duplicate or otherwise use any portion of the Confidential Operations Manual in an unauthorized manner.

### 8.    AREA REPRESENTATIVE'S OBLIGATIONS

### 8.1    Office Premises

8.1.1    Within thirty (30) days from the date of this Agreement, or as otherwise approved in writing by Franchisor, Area Representative shall have selected a site for your Area Representative Business that is approved by Franchisor. Within ninety (90) days from the date of this Agreement, or as otherwise approved in writing by Franchisor, Area Representative shall have acquired and taken occupancy of an acceptable business office premises ("Premises") within the Territory, which shall serve as the principal place of business for the Area Representative Business and commenced operations of the Area Representative Business. Additionally, Area Representative shall have, by such time, acquired a business telephone, acceptable high-speed Internet access, and hired such staff as may be reasonably necessary to operate the business as determined by or agreed to by Franchisor. Franchisor agrees that, if Area Representative enters into a Franchise Agreement with Franchisor and operates a Franchised European Wax Center within the Territory that has an acceptable business office premises to also serve as the principal place of business of the Area Representative Business, then, subject to Franchisor's reasonable approval, such location may also serve as the principal place of business for the Area Representative Business.

8.1.2    Franchisor does not represent that it, any Affiliate or any of its owners or employees have special expertise in selecting sites. Neither Franchisor's assistance

EWC-0018

nor approval is intended to indicate or indicates that the Area Representative Business will be profitable or successful at the selected Premises. Area Representative is solely responsible for finding and selecting the Premises for the Area Representative Business. Area Representative acknowledges that to the extent Franchisor is involved in the selection of the Premises, Franchisor's involvement is solely for the protection of Franchisor's interest and is not intended for the benefit of Area Representative or should Franchisor's involvement in any way imply or guarantee the success or profitability of the selected Premises. Area Representative further acknowledges that Area Representative has not offered or is in any way involved in lease negotiations for the Premises of the Area Representative Business.

### 8.2    Development of Disclosure Document

Area Representative shall use the Disclosure Document and Franchise Agreement prepared by Franchisor and provided to Area Representative. Area Representative will provide Franchisor with copies of all such Disclosure Documents and applications and will certify all information in such documents regarding Area Representative and its officers, directors, partners, subsidiaries and Affiliates to be complete, true and correct. Area Representative agrees that it shall have no right to solicit prospective Franchisees or otherwise develop the European Wax Center System pursuant to this Agreement until such time as Area Representative has made all revisions to the Disclosure Document and application(s) as required by Franchisor and all necessary registrations have been obtained.

Each party shall notify the other party in writing within ninety (90) days of the date of this Agreement if such party has, at such time, been unable to obtain any necessary governmental approval to sell franchises in the Territory. Either Franchisor or Area Representative may terminate the term of this Agreement upon written notice to the other party within thirty (30) days of the receipt of such notice by the other party. If the reason that Franchisor or Area Representative has been unable to obtain any necessary governmental approval to sell franchises in the Territory was not the fault of Area Representative (e.g. Area Representative's actions, omissions, or background), Franchisor shall refund the License Fee in full. If the reason that Franchisor or Area Representative has been unable to obtain any necessary governmental approval to sell franchises in the Territory was the fault of Area Representative, Franchisor shall retain the License Fee.

### 8.3    Amendment of Disclosure Document, Contracts and Permits

8.3.1       During the term of this Agreement, Area Representative will maintain and amend all Franchise Agreements and all Disclosure Documents. Except for Area Representative's expenses, if any, incurred for providing information about Area Representative and its officers, directors and employees determined by Franchisor as required to be included in the Disclosure Documents, all expenses of preparing, amending, obtaining, and maintaining such Disclosure Documents shall be the sole responsibility of Franchisor. All expenses of preparing, amending, obtaining, and maintaining all registrations and permits required by Area Representative to operate its business shall be the sole responsibility of Area Representative. Franchisor shall provide Area Representative with such information as Area Representative may require in complying with applicable law. In addition to Area Representative's other indemnification obligations, Area Representative will indemnify and hold harmless Franchisor

EWC-0019

from and against any and all claims arising from any failure by Area Representative to comply with laws applicable to Area Representative's provision of the Support Services, Area Representative's failure to comply with any rules or regulations relating to the sales of franchises, or Area Representative's failure to maintain any necessary registrations or permits or to comply with any other applicable state or federal law.

        8.3.2        If Area Representative forms a corporation, it shall comply with the following requirements throughout the term of this Agreement:

        8.3.2.1     Area Representative shall furnish Franchisor with its Articles of Incorporation, Bylaws, other governing documents, and any other documents Franchisor may reasonably request and any amendments thereto;

        8.3.2.2     Area Representative shall confine its business activities, and shall at all times provide proof that its activities are confined, exclusively to operating the Area Representative Business, pursuant to all its obligations articulated in this Agreement;

        8.3.2.3     Area Representative shall maintain stop transfer instructions against the transfer of its records of any equity securities, and each stock certificate of Area Representative shall at all times have conspicuously endorsed upon its face a statement in a form satisfactory to Franchisor that it is held subject to, and that further assignment or transfer thereof is subject to, all restrictions imposed upon assignments or transfers by this Agreement; and

        8.3.2.4     Area Representative shall maintain a current list of all owners of record and all beneficial owners of any class of voting stock of Area Representative and shall furnish the list to Franchisor upon request.

**8.4**      **Equipment and Supplies**

        From time to time, Franchisor may require Area Representative to utilize certain software, hardware, signs, stationery, supplies, products, and other items to perform the duties required of an Area Representative. If Area Representative proposes to use in the performance of its obligation, any materials or supplies which is not then approved by Franchisor as meeting its minimum specifications and quality standards, or to purchase any product from a supplier that is not then designated by Franchisor as an approved supplier, Area Representative shall first notify Franchisor and shall, upon request by Franchisor, submit samples and such other information as Franchisor requires for examination and/or testing or to otherwise determine whether such product, material or supply, or such proposed supplier meets its specifications and quality standards. A charge not to exceed the reasonable cost of the inspection and evaluation and the actual cost of the test shall be paid by Area Representative to Franchisor or the supplier. Franchisor reserves the right, at its option, to re-inspect the facilities and products of any supplier of an approved item and to revoke its approval of any item which fails to continue to meet any of Franchisor's criteria. We will notify you if we revoke our approval of items or suppliers, and you must immediately stop using those items or suppliers.

EWC-0020

### 8.5     Franchisee Solicitation

Area Representative shall use, at all times, best efforts in actively identifying and soliciting prospective Franchisees for Franchised Centers to be located within the Territory ("Franchisee Solicitation"). Area Representative will submit completed forms and reports to Franchisor as prescribed by Franchisor from time to time, including candidate information, applications and other pre-opening assistance forms and reports related to prospective Franchisees' personal qualifications and evaluations. Area Representative shall instruct prospective Franchisees approved for the purchase of a Franchised Center by Franchisor to submit properly executed documents and certified funds (payable to EWC Franchise Group, Inc. or as Franchisor may designate from time to time). Franchisor shall have the sole and exclusive right to approve or refuse any and all franchise applications submitted by Area Representative.

### 8.6     Area Representative's Obligations to Franchisees

8.6.1        Area Representative shall perform Support Services that include, but are not limited to, the following services:

8.6.1.1     Upon Franchisor's request, Area Representative shall actively participate in, and conduct portions of, the ongoing training programs provided to Franchisees in its Territory attending national or regional franchisee conventions, seminars, conferences and/or retreats.

8.6.1.2     Area Representative shall grant Franchisor and its agents the right to enter any Premises operated hereunder for the purposes of conducting inspections and monitoring Area Representative's operations, and shall cooperate fully with Franchisor's representatives in such steps as may be necessary to immediately correct any deficiencies detected during such inspections or monitoring.

8.6.1.3     Area Representative shall adhere to the operational standards required to be adhered to by all Franchisees and other area representatives.

8.6.1.4     Area Representative shall provide tours for prospective Franchisees of the operations of existing Franchised Centers to the extent permitted by existing Franchisees.

8.6.1.5     Area Representative shall assist Franchisor in marketing research and test marketing of new products, services, equipment, technology, marketing, and advertising as may be requested or directed by Franchisor from time to time.

8.6.2        In accordance with Area Representative's obligation to provide Support Services in the Territory, Area Representative covenants and agrees as follows:

8.6.2.1     Area Representative shall provide the services, supervision and assistance for all Franchised Centers in the Territory in strict compliance with the terms of the Franchise Agreement signed by each Franchisee in the Territory.

EWC-0021

8.6.2.2     Area Representative shall, at all times during the term of this Agreement, require each Franchisee, within the Territory, to be developed, operated and managed in accordance with Franchisor's Confidential Operations Manual and the terms of the Franchise Agreement signed by each Franchisee in the Territory. Notwithstanding the foregoing, any individual Franchisee's default under a Franchise Agreement or refusal to operate or manage its European Wax Center in accordance with the foregoing requirements shall not be a default of Area Representative of this Agreement if Area Representative made reasonable attempts to provide Support Services to such Franchisee.

8.6.2.3     Area Representative shall keep accurate records concerning all transactions and communications between Area Representative and all Franchisees relating to the operation of the Franchises in the Territory, and Franchisor shall have the right to examine and copy all such records during reasonable business hours. At the end of each term, Area Representative shall provide Franchisor with a copy of all such records, but if this Agreement is not renewed for a subsequent term, Area Representative shall provide all such materials to Franchisor and Area Representative shall not retain copies for itself without receiving Franchisor's express written consent to do so.

8.6.2.4     On or before the fifteenth (15th) of each month, the Area Representative shall furnish Franchisor with monthly written reports regarding the operation of the Area Representative Business and Franchised Centers located within the Territory in the form and manner prescribed by Franchisor in writing.

8.6.2.5     Area Representative will make any changes specified by Franchisor to the Confidential Operations Manual, System and advertising materials upon receiving written notice from Franchisor. No changes to these materials may be made by the Area Representative without the prior written approval of Franchisor, which may be withheld by Franchisor in its sole discretion.

8.6.2.6     Area Representative shall provide advice and assistance to Franchisees in connection with developing and improving the Franchised Center including assistance in attracting new clients for Franchised Centers within the Territory.

8.6.2.7     Area Representative shall provide guidance in implementing publicity, advertising and marketing programs, operating and sales procedures, and bookkeeping and accounting programs for Franchisees within the Territory.

8.6.2.8     Area Representative shall ascertain through field audits, review and inspections that each Franchisee in the Territory has complied satisfactorily with all of the terms and conditions of the Franchise Agreement, specifications, standards, operating procedures, and the Confidential Operations Manual and shall promptly notify Franchisee in writing, with a copy and evaluation report to Franchisor, of any deficiencies. Area Representative understands and acknowledges that its inspections and reports are advisory only and that Franchisor shall have (a) all of the rights to inspect and ascertain compliance of all Franchisees as if this Agreement were not in effect; (b) the sole right to send notices of default to Franchisees; (c) the sole right to terminate a Franchise Agreement for failure to cure such defaults (if an opportunity to cure is granted); and (d) the sole right to take any legal action with

16

respect to any violation of a Franchise Agreement. If Area Representative believes that any Franchisee in the Territory has breached a Franchise Agreement with Franchisor, Area Representative shall document in writing all facts related to the alleged breach and request in writing that Franchisor investigate such alleged breach. If, as a result of Franchisor's investigation, Franchisor determines that there is a breach by Franchisee of its Franchise Agreement with Franchisor, Franchisor may take such action as it deems appropriate.

8.6.2.9    Area Representative shall, at Franchisor's written request, establish an advertising cooperative for all Franchises located in the Territory using publicity, advertising, forms and procedures supplied by Franchisor.

8.6.2.10    Area Representative acknowledges that it is being delegated certain responsibilities of Franchisor under the terms of the Franchise Agreement between Franchisor and Franchisees within the Territory granted to Area Representative. The responsibilities to be performed by Area Representative are described in this Agreement and/or in the Confidential Operations Manual and may include other reasonable standards and specifications provided by Franchisor from time to time, and the responsibilities to Area Representatives will not materially change during the term of this Agreement. In providing services to Franchisees of European Wax Centers located in the Territory, Area Representative shall in all respects comply with the terms and conditions of any Franchise Agreement or other agreement in effect between Area Representative and Franchisor. Area Representative understands, however, that its rights as an Area Representative are only by virtue of this Agreement and that it is not in any manner a party, third party beneficiary, or holder of any other right or title to or interest in any Franchise Agreement. Similarly, no Franchisee is a third party beneficiary of this Agreement or any other agreement between Franchisor and Area Representative. Area Representative agrees that it may not under any circumstances sell any products, services or other items to, or collect any money for any reason, from Franchisees without Franchisor's prior written consent, and Franchisor may, at its sole discretion, withhold such consent.

**8.7    Compliance with Good Business Practices**

Area Representative shall, at all times, give prompt, courteous and efficient service to Franchisees in the Territory. Area Representative shall, in all dealings with Franchisees, prospective Franchisees, and the public, adhere to the highest standards of honesty, integrity, good faith, fair dealing and ethical conduct.

**8.8    Legal Compliance**

Area Representative shall secure and maintain in force all required licenses, permits and certificates relating to Area Representative's activities under this Agreement and operate in full compliance with all applicable laws, ordinances and regulations. Area Representative acknowledges being advised that many jurisdictions have enacted laws concerning the advertising, sale, renewal, and termination of, and continuing relationship between parties to, a Franchise Agreement, including, without limitation, laws concerning disclosure requirements. Area Representative agrees promptly to become aware of, and to

EWC-0023

comply with, all such laws and legal requirements in force in the Territory and to utilize only a Disclosure Document that Franchisor has approved for use in the applicable jurisdiction.

**8.9     Review of Materials**

Area Representative shall confirm that the information contained in any written materials, agreements, and other documents prepared by Area Representative or by Franchisor about Area Representative, its officers, directors or employees (specifically including the Disclosure Documents) related to the offer or sale of franchises is true, correct, and not misleading.   Area Representative shall not use any such materials prepared by Area Representative until Area Representative submits such materials to Franchisor for its approval and Franchisor approves such materials.  Franchisor shall provide Area Representative with revised Disclosure Documents and other agreements on a timely basis as and when such documents are revised by Franchisor.  If Area Representative notifies Franchisor of an error in any information in Franchisor's documents, Franchisor shall have a reasonable period of time to attempt to correct any deficiencies, misrepresentations or omissions in such information.

**8.10     Full-Time Commitment**

Area Representative's business shall at all times be under the direct, day-to-day, full-time supervision of a General Manager.

**8.11     Monthly Franchise Solicitation Advertising**

Area Representative is required to spend $1,500 a month on advertising for the specific purpose of soliciting prospective Franchisees in the Territory.  If, during any year after two (2) years from the date of this Agreement, Area Representative has met its Development Schedule for that year prior to the end of the year, then Area Representative shall not be obligated to spend any additional amounts on advertising during the remainder of such year. Area Representative shall submit to Franchisor an accounting of the amounts spent on advertising within thirty (30) days following the end of each quarter following the date of this Agreement. In addition, Area Representative agrees to list its business telephone numbers in the white pages and in the yellow or classified telephone directories distributed in the Territory.

**8.12     Marketing and Advertising Responsibility**

Franchisor shall oversee all marketing programs with sole control over the creative concepts, materials and media used in such programs, and the placement and allocation thereof. Area Representative shall assist Franchisor in carrying out these programs and carry out those responsibilities Franchisor may delegate.

**8.13     Computer**

Area Representative is required to purchase, install and use computer and customer relationship management systems consisting of hardware and software in accordance with Franchisor's specifications. Franchisor shall have full access to all of these and all related information by means of direct access, either in person or by telephone, modem or Internet to

18

permit Franchisor to verify Area Representative's compliance with its obligations under this Agreement.

**8.14    Right to Inspect**

Franchisor or its designee has the right, during normal business hours, to examine, copy and audit the books, records and tax returns of Area Representative to verify Area Representative's compliance with its obligations under this Agreement. If the audit or any other inspection should reveal that any payments to Franchisor have been underpaid or unpaid, then Area Representative shall immediately pay to Franchisor the amount owed plus interest from the date such amount was due until paid at the rate of eighteen percent (18%) per annum (or the highest rate allowed by the law of the state where Area Representative is located, whichever is lower). The foregoing remedies shall be in addition to any other remedies Franchisor may have, including the right of recourse to the Commission for any amounts Area Representative may owe Franchisor.

**8.15    Release of Records**

At Franchisor's request, Area Representative shall authorize and direct any third parties, including accounting and legal professionals, to release to Franchisor all accounting and financial records arising from or relating to the operation of the Area Representative Business. Area Representative shall execute all documents necessary to facilitate the release of records referenced herein to Franchisor.

**9.    AREA REPRESENTATIVE SHALL COMPLY WITH FRANCHISOR'S STANDARDS OF OPERATION**

**9.1    Area Representative Shall Use and Promote Only Authorized Products and Services and Purchase from Approved Suppliers**

9.1.1    Area Representative acknowledges that the reputation and goodwill of the System depends on using the products and services Franchisor may specify for the Area Representative Business and the Franchised Centers. Accordingly, Area Representative shall use in its operation of the Area Representative Business and in providing Support Services, only those supplies, signs, equipment, inventory and other items and services that Franchisor from time to time approves (and which are not thereafter disapproved) and that comply with Franchisor's specifications and quality standards. If required by Franchisor, any such items or services shall be purchased only from "Approved Suppliers" that Franchisor designates or approves (which might include, or be limited to, Franchisor or an Affiliate). Area Representative shall not use or promote, whether in the Area Representative Business or to any franchisee in the Franchise, any products or services that Franchisor has not approved.

9.1.2    Area Representative shall use, offer, and promote, as may be directed by Franchisor, all products and services designated by Franchisor. Area Representative shall implement any additions and changes to the products and services used in its operation of the Area Representative Business and in providing Support Services that Franchisor requires.

19

9.1.3    During the term of this Agreement, Area Representative may not offer or promote in its Area Representative Business any products that compete with any promotions disseminated by Franchisor.

**9.2    Area Representative Shall Only Purchase from Suppliers Approved by Franchisor**

9.2.1    Franchisor shall provide Area Representative, in the Confidential Operations Manual or otherwise in writing, with a list of specifications and, if required, a list of Approved Suppliers for some or all of Franchisor's Products. If Franchisor or an Affiliate is an Approved Supplier, Area Representative shall execute a standard form purchase, lease, license or supply agreement for the items to be supplied by Franchisor or its Affiliate.

9.2.2    If Area Representative desires to utilize any services, products, or suppliers that Franchisor has not approved, Area Representative shall first send Franchisor sufficient information, specifications and/or samples for Franchisor to determine whether the service or product complies with its standards and specifications, or whether the supplier meets its Approved Supplier criteria. Area Representative shall bear all reasonable expenses incurred by Franchisor in connection with determining whether it shall approve an item, service or supplier. Franchisor will decide within a reasonable time (usually thirty [30] days) after receiving the required information. Approval of a supplier may be conditioned on requirements related to the frequency of delivery, standards of service, consistency, reliability and general reputation.

9.2.3    Nothing in this Section 9.2 shall be construed to require Franchisor to approve any particular supplier, or to require Franchisor to make available to prospective suppliers, standards and specifications that Franchisor, in its discretion, deems confidential.

9.2.4    Notwithstanding anything contrary in this Agreement, Franchisor has the right to review, from time to time, its approval of any items or suppliers. Franchisor may revoke its approval of any item, service or supplier at any time, and in its sole discretion, by notifying Area Representative and/or the supplier. Area Representative shall, at its own expense, promptly cease using, or promoting those items disapproved by Franchisor and shall promptly cease purchasing or promoting suppliers disapproved by Franchisor.

9.2.5    Franchisor has the right to designate certain products and services, not otherwise authorized for general use as part of the System, to be offered locally or regionally based upon such factors as Franchisor determines including, but not limited to, test marketing and regional or local differences. Franchisor has the right, in its sole discretion from time to time, to give its consent to one (1) or more Area Representatives to use or promote certain items not authorized for general use as part of the System.

9.2.6    Franchisor has the right to retain volume rebates, markups and other benefits from suppliers or in connection with the furnishing of supplies. Area Representative shall have no entitlement to or interest in any such benefits.

20

EWC-0026

### 9.3    Appearance and Condition of the Area Representative Business

9.3.1      Area Representative shall maintain the Area Representative Business and the Premises in "like new" condition, and shall repair or replace furnishings, equipment, fixtures and signage as necessary to comply with the health and safety standards and specifications of Franchisor and Area Representative's lessor and any applicable laws or regulations. The expense of such maintenance shall be borne by Area Representative and shall be in addition to any required System modifications, as described in Section 10.8.

9.3.2      Area Representative shall post all signage, posters, business cards, catalogs, and other promotional materials at locations and in the manner specified by Franchisor in the Confidential Operations Manual from time to time. Area Representative shall also comply with all standards and specifications set forth in the Confidential Operations Manual, from time to time, regarding the print quality and other specifications for all signage, posters, business cards, catalogs, and other promotional materials.

9.3.3      Franchisor may require Area Representative to purchase any or all of the signage, posters, business cards, catalogs, and other promotional materials required by Franchisor to be purchased from Franchisor or its Affiliate.

### 9.4    Hours of Operation of the Area Representative Business

Area Representative shall keep the Area Representative Business open for business during normal business hours for European Wax Centers as specified in the Confidential Operations Manual or such other number of hours as is reasonably and mutually agreed upon by Franchisor and Area Representative. Any deviations from the required hours first must be approved in writing by Franchisor which approval may be revoked or rescinded by Franchisor at any time on notice.

### 9.5    Contributions and Donations

In order to protect the Marks, Area Representative must obtain written consent from Franchisor before making any contributions or donations of items, services or funds to any individual or entity, or provide any type of other benefit to any charitable, religious, political, social, civic or other type of organization (or to any individual on behalf of any organization). Franchisor may withhold any such consent in its sole and absolute discretion.

### 9.6    Area Representative Shall Secure All Necessary Licenses and Permits

Area Representative shall secure and maintain in force all required licenses, permits and certificates necessary for the operation of the Area Representative Business and shall operate the Area Representative Business in full compliance with all applicable laws, ordinances and regulations. Area Representative shall ensure that each of its employees has any certifications or licenses required by applicable law. Franchisor makes no representation to Area Representative with regard to any legal requirements that Area Representative must satisfy or comply with in connection with the operation of the Area Representative Business. Area Representative shall be solely responsible for investigating and complying with all such laws, ordinances and regulations with regard to the operation of the Area Representative Business.

EWC-0027

**9.7    Franchisor Shall Provide Area Representative Notification of All Proceedings Against Area Representative**

Area Representative shall notify Franchisor in writing of the commencement of any action, suit or proceeding involving Area Representative or the Area Representative Business, and of the issuance of any order, writ, injunction, judgment, award or decree that may affect the operation or financial condition of the Area Representative Business not more than five (5) days after notice of such commencement or issuance. Area Representative shall deliver to Franchisor not more than five (5) days after Area Representative's receipt thereof, a copy of any inspection report, warning, certificate or rating by any governmental agency relating to any health or safety law, rule or regulation that reflects Area Representative's failure to meet and maintain the highest applicable rating or Area Representative's noncompliance or less than full compliance with any applicable law, rule or regulation.

**9.8    Area Representative Shall Comply with Good Business Practices**

Area Representative acknowledges that the quality of service, and every detail of appearance and demeanor of Area Representative and any employee, is material to this Agreement and the relationship created and licenses granted hereby. Therefore, Area Representative shall endeavor to maintain high standards of quality and service in the operation of the Area Representative Business. Area Representative shall at all time provide Support Services in a courteous and efficient manner. The Area Representative Business shall in all dealings with Franchisees, vendors, and the general public adhere to the highest standards of honesty, fair dealing and ethical conduct. If Franchisor deems that Area Representative did not fairly handle a complaint, Franchisor has the right to intervene. Franchisor has the right to terminate the term of this Agreement for repeated violation of this Section. Area Representative shall reimburse Franchisor for all costs incurred by Franchisor in handling complaints for the Area Representative Business pursuant to this Section.

**9.9    Area Representative Shall Comply with Franchisor's Uniform Requirements**

Area Representative shall abide by any uniform or the dress code requirements stated in the Confidential Operations Manual. Uniforms, if required, must be purchased from an Approved Supplier, if such is designated, or if none, then a supplier who meets Franchisor's specifications and quality standards for uniforms.

**9.10    Email**

Area Representative shall only use the email accounts provided by Franchisor to communicate with Franchisor and Franchisees.

**10.    USE OF SYSTEM, MARKS, TRADE SECRETS AND OTHER CONFIDENTIAL INFORMATION**

**10.1    Ownership of Marks**

Area Representative's right to use the Marks is derived solely from this Agreement, is nonexclusive and is limited to the conduct of the Area Representative Business

22

pursuant to, and in compliance with, this Agreement and all applicable standards, specifications and operating procedures prescribed from time to time by Franchisor. Any unauthorized use of the Marks by Area Representative is a breach of this Agreement and an infringement of the rights of Franchisor in and to the Marks. Area Representative's use of the Marks, and any goodwill created thereby, shall inure to the benefit of Franchisor. Area Representative shall not at any time acquire an ownership interest in the Marks by virtue of any use it may make of the Marks. This Agreement does not confer any goodwill, title or interest in the Marks to Area Representative. Area Representative shall not, at any time during the term of this Agreement or, after the termination or expiration of the Term of this Agreement, contest the validity or ownership of any of the Marks or assist any other person in contesting the validity or ownership of any of the Marks.

### 10.2    Limitations on Area Representative's Use of the Marks

Area Representative shall not use any Mark or portion of any Mark as part of any business entity name. Area Representative shall not use any Mark in connection with the sale of any unauthorized product or service or in any other manner not expressly authorized in writing by Franchisor. Area Representative shall give such notices of trademark and service mark registrations as Franchisor specifies and obtain such fictitious or assumed name registrations as may be required under applicable law to operate the Area Representative Business. Area Representative shall not register or seek to register as a trademark or service mark, either with the United States Patent and Trademark Office or any state or foreign country, any of the Marks or a trademark or service mark that is confusingly similar to any Mark licensed to Area Representative. Area Representative shall not claim any rights in or to any Mark or modification or variation thereof. Area Representative shall not claim any rights in or to any Mark or modification or variation thereof.

### 10.3    Notification of Infringements of the Marks; Claims Against the Marks

Area Representative shall immediately notify Franchisor of any infringement of the Marks or challenge to its use of any of the Marks or claim by any person of any rights in any of the Marks. Area Representative shall not communicate with any person other than Franchisor and, through Area Representative's counsel, Franchisor's counsel in connection with any such infringement, challenge or claim; provided, however, Area Representative may communicate with Area Representative's counsel at Area Representative's expense. Franchisor has the right, but not the obligation, to take any action in connection with any such infringement, challenge or claim and has the right to exclusively control any litigation or other proceeding arising out of any infringement, challenge, or claim or otherwise relating to any of the Marks. Area Representative shall execute any and all instruments and documents, render such assistance, and do such acts and things as may, in the opinion of Franchisor's counsel, be necessary or advisable to protect and maintain Franchisor's interests in any such litigation or other proceeding or to otherwise protect and maintain Franchisor's interest in the Marks.

### 10.4    Franchisor's Indemnification for Area Representative's Use of Marks

Franchisor shall reimburse Area Representative for all expenses reasonably incurred by Area Representative in any trademark or similar proceeding disputing Area

EWC-0029

Representative's authorized use of any Mark, provided that Area Representative has timely notified Franchisor of such proceeding and has complied with this Agreement and Franchisor's directions in responding to such proceeding. At Franchisor's option, Franchisor or its designee may defend and control the defense of any proceeding arising directly from Area Representative's use of any Mark. This indemnification shall not include the expense to Area Representative of removing signage or discontinuance of the use of the Marks. This indemnification shall not apply to litigation between Franchisor and Area Representative wherein Area Representative's use of the Marks is disputed or challenged by Franchisor. This indemnification shall not apply to any separate legal fees or costs incurred by Area Representative in seeking independent counsel separate from the counsel representing Franchisor and Area Representative in the event of litigation disputing Franchisor and Area Representative's use of the Marks.

### 10.5    Area Representative's Discontinuance of Use of the Marks

If it becomes necessary for Area Representative to modify or discontinue use of any of the Marks, or use one (1) or more additional or substitute trade names, trademarks, service marks or other commercial symbols, Area Representative shall, at its sole cost and expense, comply with Franchisor's directions within ten (10) business days after notice to Area Representative by Franchisor and subject to the limitations in Section 10.8 of this Agreement. Franchisor shall not reimburse Area Representative for its expenses in modifying or discontinuing the use of a Mark or any loss of goodwill associated with any modified or discontinued Mark or for any expenditures made by Area Representative to promote a modified or substitute Mark.

### 10.6    Franchisor's Right to Inspect Area Representative's Use of the Marks

To preserve the validity and integrity of the Marks and any copyrighted materials licensed under this Agreement, and to ensure that Area Representative is properly employing the Marks in the operation of the Area Representative Business, Franchisor and its designees have the right to conduct real time surveillance of the Area Representative Business to enter and inspect the Premises at all reasonable times and, additionally, have the right to observe the manner in which Area Representative renders Support Services and to inspect reports, forms and documents and related data to ensure that Area Representative is operating the Area Representative Business in accordance with the quality control provisions and performance standards established by Franchisor. Franchisor or its designee has the right to observe Area Representative and any employees during the operation of the Area Representative Business and to interview and survey (whether in person or by mail) Franchisees and prospective Franchisees and to photograph and videotape the Premises.

### 10.7    Franchisor's Sole Right to Domain Name

Area Representative shall not establish, create or operate an Internet site or Web site using a domain name or uniform resource locator containing the Marks or the words "EUROPEAN WAX CENTER" or any variation thereof without Franchisor prior written consent. Area Representative shall not advertise on the Internet using the "EUROPEAN WAX CENTER" name and any other Mark. Franchisor is the sole owner of all right, title and interest

EWC-0030

in and to such domain names as Franchisor shall designate in the Confidential Operations Manual.

### 10.8    System Modifications

Area Representative recognizes that over time, Franchisor may introduce, as part of the System, other methods or technology which require certain System modifications including, without limitation, the adoption and use of modified or substitute Marks, new computer hardware and software, equipment or signs. Area Representative agrees to make all required upgrades and modifications at its expense as may be required by Franchisor; provided, however, that Area Representative shall not be required to make any expenditures that are unreasonably disproportionate to Area Representative's initial investment to establish the Area Representative business, not including the License Fee. If such additional investment is required in the last year of the initial 10-year term of this Agreement, Area Representative may avoid making the investment by providing notice of intent not to renew the Area Representative Agreement, unless the investment is in connection with a modification to the System required by law or court order.

### 10.9    Requirement of Confidentiality

10.9.1      Area Representative acknowledges that Franchisor will disclose Trade Secrets and other Confidential Information to Area Representative during the term of this Agreement, including through a training program, through the Confidential Operations Manual, training guides and materials and as a result of guidance furnished to Area Representative during the term of this Agreement.  Area Representative shall not acquire any interest in the Trade Secrets or other Confidential Information, other than the right to utilize it in the development and operation of the Area Representative business and in performing its duties during the term of this Agreement.

10.9.2      Area Representative acknowledges that the use or duplication of the Trade Secrets or other Confidential Information in any other business venture would constitute an unfair method of competition. Area Representative acknowledges that the Trade Secrets and other Confidential Information are proprietary and are disclosed to Area Representative solely on the condition that Area Representative (and all holders of a legal or beneficial interest in Area Representative and all officers, directors, executives, managers and members of the professional staff of Area Representative): (a) shall not use the Trade Secrets or other Confidential Information in any other business or capacity; (b) shall maintain the absolute confidentiality of the Trade Secrets and other Confidential Information during and after the term of this Agreement; (c) shall not make any unauthorized copies of any portion of the Trade Secrets or other Confidential Information disclosed in written or other tangible form; and (d) shall adopt and implement all reasonable procedures prescribed, from time to time, by Franchisor to prevent unauthorized use or disclosure of the Trade Secrets and other Confidential Information.

10.9.3      Area Representative shall enforce this Section as to its employees, agents and representatives and shall be liable to Franchisor for any unauthorized disclosure or use of Trade Secrets or other Confidential Information by any of them.

EWC-0031

10.9.4        This Section shall survive the termination of the term of this Agreement indefinitely.

### 10.10   Franchisor Owns All Additional Developments

All ideas, concepts, techniques or materials concerning the Franchised Center and the Area Representative Business, whether or not protectable intellectual property and whether created by or for Area Representative or any of its owners or employees, must be promptly disclosed to Franchisor and will be deemed the sole and exclusive property of Franchisor and "works made-for-hire" for Franchisor, and no compensation will be due to Area Representative or its owners or employees, therefore, and Area Representative agrees to assign to Franchisor all right, title and interest in any intellectual property so developed. Franchisor may incorporate such items into the System.  To the extent any item does not qualify as a "work made-for-hire" for Franchisor, Area Representative shall assign ownership of that item, and all related rights to that item, to Franchisor and shall sign any assignment or other document as Franchisor requests to assist Franchisor in obtaining or preserving intellectual property rights in the item.  Franchisor shall disclose to Area Representative concepts and developments of other Area Representatives that are made part of the System.  As Franchisor may reasonably request, Area Representative shall take all actions to assist Franchisor's efforts to obtain or maintain intellectual property rights in any item or process related to the System, whether developed by Area Representative or not.

## 11.    RELATIONSHIP OF FRANCHISOR AND AREA REPRESENTATIVE AND INDEMNIFICATION

### 11.1   Description of Relationship of Franchisor and Area Representative.

11.1.1        The appointment of Area Representative pursuant to this Agreement does not make Area Representative a general agent or employee of Franchisor.   Area Representative shall not have the right to bind Franchisor, to transact any business, or make any promises or representations on behalf of Franchisor, except as expressly provided in this Agreement.  Area Representative shall at all times represent itself to third parties only as an appointed and licensed Area Representative.  Neither this Agreement nor the relationship between the Area Representative and Franchisor shall constitute a partnership or a joint venture between Area Representative and Franchisor.  This Agreement is purely a contractual relationship between the parties and does not appoint or make Area Representative an agent, legal representative, joint venturer, partner, employee, servant or independent contractor of Franchisor for any purpose whatsoever.  This Agreement does not establish a fiduciary relationship between the parties.

11.1.2        Area Representative may not represent or imply to third parties that Area Representative is authorized to make contracts, agreements, warranties or representations on behalf of Franchisor, or to create obligations, express or implied, on Franchisor's behalf. During the term of this Agreement, and any extension or renewal of this Agreement, Area Representative shall hold itself out to the public only as an Area Representative.  Area Representative shall take such affirmative action as may be necessary to do so including, without limitation, exhibiting a notice of that fact in a conspicuous place on the Premises and on all

EWC-0032

forms, stationery or other written materials, the content of which Franchisor has the right to specify.

       11.1.3      Under no circumstances shall Franchisor be liable for any act, omission, contract, debt or any other obligation of Area Representative that Franchisor have not consented to in writing. Franchisor shall in no way be responsible for any injuries to persons or property resulting from the operation of the Area Representative Business. Any third party contractors and vendors retained by Area Representative, and not specifically authorized in writing by Franchisor, are independent contractors of Area Representative alone.

### 11.2    Franchisor May Act in its Own Interest

       Unless otherwise specifically provided in this Agreement with respect to certain issues, whenever this Agreement requires Area Representative to obtain Franchisor's written consent or permits Area Representative to take any action or refrain from taking any action, Franchisor is free to act in its own self-interest without any obligation to act reasonably, to consider the impact on Area Representative or to act subject to any other standard of care limiting Franchisor's right, except as may be provided by statute or regulation or this Agreement.

### 11.3    Indemnification by Area Representative

       Area Representative shall hold harmless and indemnify Franchisor, any Affiliate, all holders of a legal or beneficial interest in Franchisor and all officers, directors, executives, managers, members, partners, owners, employees, agents, successors and assigns (collectively "Franchisor Indemnitees") from and against all losses, damages, fines, costs, expenses or liability (including reasonable attorneys' fees and all other costs of litigation) incurred in connection with any action, suit, demand, claim, investigation or proceeding, or any settlement thereof, that arises from or is based upon Area Representative's (a) ownership or operation of the Area Representative Business; (b) violation, breach or asserted violation or breach of any federal, state or local law, regulation or rule; (c) breach of any representation, warranty, covenant, or provision of this Agreement or any other agreement between Area Representative and Franchisor (or an Affiliate); (d) defamation of Franchisor or the System; (e) acts, errors or omissions committed or incurred in connection with the Area Representative Business, including any negligent or intentional acts; or (f) infringement, violation or alleged infringement or violation of any Mark, patent or copyright or any misuse of the Confidential Information.   The obligations of this Section 11.3 shall expressly survive the termination of the term of this Agreement.

### 11.4    Franchisor's Right to Retain Counsel

       When Area Representative reasonably becomes aware of any action, suit, demand, claim, investigation or proceeding that may give rise to a claim for indemnification by a Franchisor Indemnitee, Area Representative shall give Franchisor immediate notice of any such action, suit, demand, claim, investigation or proceeding. In order to protect persons, property, Franchisor's reputation or the goodwill of others, Franchisor has the right to, at any time without notice, take such remedial or corrective actions as it deems expedient with respect to any action, suit, demand, claim, investigation or proceeding if, in Franchisor's sole judgment, there are grounds to believe any of the acts or circumstances listed above have occurred.   Area

EWC-0033

Representative shall cooperate with Franchisor in its handling of any such action, suit, demand, claim, investigation or proceeding. If Franchisor's exercise of its rights under this Section causes any of Area Representative's insurers to refuse to pay a third party claim, all cause of action and legal remedies Area Representative might have against such insurer shall automatically be assigned to Franchisor without the need for any further action on either party's part. Under no circumstances shall Franchisor be required or obligated to seek coverage from third parties or otherwise mitigate losses in order to maintain a claim against Area Representative. The failure to pursue such remedy or mitigate such loss shall in no way reduce the amounts recoverable by Franchisor from Area Representative.

## 12. INSURANCE REQUIREMENTS

### 12.1 Types and Amounts of Coverage Required by Area Representative

At its sole expense, Area Representative shall procure within sixty (60) days of the Effective Date, and, at minimum, maintain in full force and effect during the term of this Agreement, the types of insurance listed below. All policies (except any workers' compensation insurance) shall expressly name Franchisor as an additional insured and all shall contain a waiver of all subrogation rights against Franchisor and its successors and assigns. Such certificates shall state that said policy or policies shall not be canceled or altered without at least thirty (30) days' prior written notice to Franchisor and shall reflect proof of payment of premiums. In addition to any other insurance that may be required by applicable law, or by lender or lessor, Area Representative shall procure:

12.1.1 "all risk" property insurance coverage on all assets including inventory, furniture, fixtures, equipment, supplies and other property used in the operation of the Area Representative Business. Area Representatives' property insurance policy shall include coverage for fire, vandalism and malicious mischief and must have coverage limits of at least full replacement cost;

12.1.2 workers' compensation insurance that complies with the statutory requirements of the state in which the Area Representative Business is located and employer liability coverage with a minimum limit of ONE HUNDRED THOUSAND DOLLARS ($100,000.00) or, if higher, the statutory minimum limit as required by state law;

12.1.3 comprehensive general liability insurance against claims for bodily and personal injury, death and property damage caused by, or occurring in conjunction with, the operation of the Area Representative Business, or Franchisee's conduct of business pursuant to this Agreement, with a minimum liability coverage of ONE MILLION DOLLARS ($1,000,000.00) per occurrence or TWO MILLION DOLLARS ($2,000,000.00) in the aggregate or, if higher, the statutory minimum limit required by state law;

12.1.4 automobile liability insurance for any vehicles owned or hired by the Area Representative Business, with a combined single limit of at least ONE MILLION DOLLARS ($1,000,000.00) or, if higher, the statutory minimum limit required by state law;

12.1.5 business interruption insurance in amounts and with terms acceptable to Franchisor; and

EWC-0034

12.1.6    such insurance as necessary to provide coverage under the indemnity provisions set forth in Section 11.3.

### 12.2    Franchisor May Increase Future Requirements

Franchisor has the right to reasonably increase the minimum liability protection requirement annually and require different or additional insurance coverage(s) to reflect inflation, changes in standards of liability, future damage awards or other relevant changes in circumstances.

### 12.3    Carrier Standards for Area Representative's Insurance

Such policies shall be written by an insurance company licensed in the state in which Area Representative operates and having at least an "A" Rating Classification as indicated in the latest issue of A.M. Best's Key Rating Guide. Although "A-" may reflect an A.M. Best's top rating, Franchisor demands an "A" rating.

### 12.4    Area Representative Shall Provide Franchisor Evidence of Area Representative's Insurance Coverage

Area Representative's obligation to procure and maintain insurance coverage as required by this Agreement shall not be limited in any way by reason of any insurance that may be maintained by Franchisor, nor shall Area Representative's performance of this obligation relieve it of liability under the indemnity provisions set forth in Section 11.3. Area Representative shall provide, annually, or more frequently if requested by Franchisor, certificates of insurance showing compliance with the foregoing requirements.

### 12.5    Area Representative's Failure to Maintain Insurance Coverage

Should Area Representative not procure and maintain insurance coverage as required by this Agreement, or if not produced by Area Representative upon request by Franchisor, then, in addition to such failure being a breach of this Agreement by Area Representative, Franchisor has the right (but not the obligation) to immediately procure such insurance coverage and to charge the premiums to Area Representative, which charges, together with a reasonable fee for expenses incurred by Franchisor in connection with such procurement, shall be payable by Area Representative immediately. If Area Representative fails to make such payments to Franchisor as required under this Section, Franchisor may withhold from any amounts payable to Area Representative any outstanding amounts Franchisor has accrued as a result of securing insurance for Area Representative.

## 13.    TRANSFERABILITY OF INTEREST

### 13.1    Transfer by Franchisor

This Agreement and all rights and duties under this Agreement are fully transferable in whole or in part by Franchisor and such rights will inure to the benefit of any person or entity to whom transferred; provided, however, that with respect to any assignment resulting in the subsequent performance by the assignee of the functions of Franchisor, the

29

EWC-0035

assignee shall assume the obligations of Franchisor under this Agreement and Franchisor shall thereafter have no liability for the performance of any obligations contained in this Agreement subject to applicable state law.

**FRANCHISOR ENTERED INTO AN AGREEMENT WITH UNIFIED BROKERAGE, LLC PURSUANT TO WHICH UNIFIED BROKERAGE, LLC WILL PROVIDE SOME OR ALL OF THE SERVICES SPECIFIED TO BE PROVIDED BY FRANCHISOR PURSUANT TO THIS AGREEMENT. SUCH SERVICES MAY INCLUDE INITIAL TRAINING, OPERATIONS ASSISTANCE, ONGOING SUPPORT, OR PERIODIC QUALITY ASSURANCE VISITS. UNIFIED BROKERAGE, LLC DOES NOT HAVE AUTHORITY TO BIND US TO ANY AGREEMENT. WE RESERVE THE RIGHT TO CHANGE THE SUPPORT SERVICES UNIFIED BROKERAGE, LLC PROVIDES TO YOU FROM TIME TO TIME.**

### 13.2 Transfer by Area Representative

The rights and duties of Area Representative as set forth in this Agreement, and the and the right of Area Representative to enter into a separate Franchise Agreement and additional related agreements to operate one (1) Franchised Center within the Territory without paying a License Fee, are personal to Area Representative, and Franchisor has agreed to enter into this contract with Area Representative in reliance upon Area Representative's personal skill and financial ability. Accordingly, neither Area Representative nor any successor of Area Representative, either immediate or remote, to any part of Area Representative's interest in this Agreement may sell, assign, transfer, convey, give away, pledge, mortgage or otherwise encumber any interest in this Agreement or in the rights granted hereby without the written approval of Franchisor, which prior written approval shall not be unreasonably withheld.

Any purported assignment or transfer, whether by operation of law or otherwise, or encumbrance of all or any part of Area Representative's rights under this Agreement, or of all or any part of the ownership interests in Area Representative, or of all or any part of the operating control of Area Representative, or of fifteen percent (15%) or more of the assets used in the operation of the Area Representative Business, shall be null and void and shall constitute a material breach of this Agreement, for which breach Franchisor may then terminate the term of this Agreement without an opportunity to cure, unless such assignment, transfer or encumbrance has the prior written consent of Franchisor.

Area Representative may not sell, assign, transfer, convey, give away, pledge, mortgage or otherwise encumber its right to enter into a separate Franchise Agreement and additional related agreements to operate one (1) Franchised Center within the Territory without paying a License Fee. If Area Representative desires to sell, assign, transfer, convey, give away, pledge, mortgage or otherwise encumber any of its other rights or assets described in the preceding sentence to any transferee, Area Representative shall first obtain the written consent of Franchisor to such transaction, which consent will be conditioned upon the satisfaction of the following conditions:

13.2.1    All obligations owed to Franchisor and all other outstanding obligations relating to the Area Representative Business shall be fully paid and satisfied.

EWC-0036

13.2.2    Unless prohibited by the law of the state where the Area Representative Business is located, Area Representative shall have executed a general release, in a form the same as or similar to the form of General Release attached as Exhibit 1 to this Agreement, releasing Franchisor and its officers, directors, shareholders and employees, in their corporate and individual capacities, from any and all claims including, without limitation, claims arising under federal, state or local laws, rules or ordinances, and any other matters incident to the termination of the term of this Agreement or to the transfer of Area Representative's interest herein or to the transfer of Area Representative's ownership of all or any part of the business which operates this franchise. If a general release is prohibited, Area Representative shall give the maximum release allowed by law.

13.2.3    The transferee shall have satisfied Franchisor that it meets Franchisor's management, business and financial standards and otherwise possesses the character and capabilities, including business reputation and credit rating, as Franchisor may reasonably require to demonstrate ability to conduct the Area Representative Business. In addition, the transferee shall agree to comply with Franchisor's training requirements contained in Section 6 of this Agreement.

13.2.4    The transferee and, at Franchisor's option, all Persons owning any interest in the transferee, shall execute the then-current Area Representative Agreement offered to new Area Representatives as offered to new franchisees, of if Franchisor has ceased offering franchises, to renewing franchisees generally, which may be substantially different from this Agreement including, without limitation, differences in payments, advertising expenditures and other material provisions. If a new Area Representative Agreement is executed, Franchisor was the right to limit its term to the unexpired term of this Agreement.

13.2.5    Area Representative shall have provided Franchisor with a complete copy of all contracts and agreements and related documentation between Area Representative and the transferee relating to the sale or transfer of the franchise.

13.2.6    Area Representative or transferee shall have paid to Franchisor a transfer fee in the amount of TWENTY THOUSAND DOLLARS ($20,000.00).

**13.3    Restriction on Transfer by Area Representative to a Controlled Entity**

If Area Representative wishes to transfer this Agreement or any interest therein to a corporation, limited liability company or other legal entity ("Controlled Entity") which shall be entirely owned by Area Representative, which Controlled Entity is being formed for the financial planning, tax or other convenience of Area Representative, Franchisor's consent to such transfer shall be conditioned upon the following requirements:

13.3.1    The Controlled Entity shall be newly organized and its charter shall provide that its activities are confined exclusively to the operation of the Area Representative Business.

13.3.2    Area Representative shall retain total ownership of the outstanding stock or other capital interest in the transferee Controlled Entity, and Area Representative shall act as the principal officer or officers and directors thereof.

EWC-0037

13.3.3     All obligations of Area Representative to Franchisor or any Affiliate shall be fully paid and satisfied prior to Franchisor's consent; provided that Area Representative shall not be required to pay a transfer fee, as required, pursuant to Section 13.2.6 of this Agreement for any transfer under this Section 13.3.

13.3.4     The Controlled Entity assignee shall enter into a written agreement with Franchisor expressly assuming the obligations of this Agreement and all other agreements relating to the operation of this Area Representative Business.  If the consent of any other contracting party to any such agreement is required, Area Representative shall have obtained such written consent and provided the same to Franchisor prior to consent by Franchisor.

13.3.5     All owners of the stock or other ownership interest of the transferee Controlled Entity shall enter into an agreement with Franchisor, jointly and severally, guaranteeing the full payment of the Controlled Entity's obligations to Franchisor and the performance by the Controlled Entity of all the obligations of the Agreement.

13.3.6     Each stock certificate or other ownership interest certificate of the Controlled Entity shall have conspicuously endorsed upon the face thereof a statement in a form satisfactory to Franchisor that it is held subject to, and that further assignment or transfer thereof is subject to, all restrictions imposed upon transfers and assignments by this Agreement.

13.3.7     Copies of the transferee Controlled Entity's Articles of Incorporation, Bylaws, Operating Agreement, and other governing regulations or documents, including resolutions of the Board of Directors authorizing entry into this Agreement, shall be promptly furnished to Franchisor.  Any amendment to any such documents shall also be furnished to Franchisor immediately upon adoption.

13.3.8     The term of the transferred Area Representative Agreement shall be the unexpired term of this Agreement. Franchisor's consent to a transfer of any interest in this Agreement or of any ownership interest in the Area Representative Business shall not constitute a waiver of any claims Franchisor may have against the transferor or the transferee, nor shall it be deemed a waiver of Franchisor's right to demand compliance with the terms of this Agreement.

**13.4     <u>Franchisor's Disclosure to Transferee</u>**

Franchisor has the right, but not the obligation and without liability of any kind or nature whatsoever to Area Representative, to make available for inspection by any intended transferee of Area Representative all or any part of Franchisor's records relating to this Agreement, the Area Representative Business or to the history of the relationship of the parties to this Agreement. Area Representative hereby specifically consents to such disclosure by Franchisor and shall release and hold Franchisor harmless from and against any claim, loss or injury resulting from an inspection of Franchisor's records relating to the Franchised Center by an intended transferee identified by Franchisee.

32

EWC-0038

### 13.5    Transfer by Death or Incapacity

13.5.1        Upon the death or Incapacity of Area Representative (if an individual) or any holder of a legal or beneficial interest in Area Representative (if a business entity), the appropriate representative of such person (whether administrator, personal representative or trustee) shall, within a reasonable time not exceeding one hundred eighty (180) days following such event, transfer such individual's interest in the Area Representative Business or in Area Representative to a third party approved by Franchisor.  Such transfers, including transfers by will or inheritance shall be subject to the conditions for assignments and transfers contained in this Agreement, unless prohibited by the laws of the state wherein Area Representative resided, with such choice of law provision being applicable only for this Section. During such one hundred eighty (180) day period, the Area Representative Business must remain at all times under the primary management of a person meeting Franchisor's management qualifications.

13.5.2        Following such a death or Incapacity of such person as described in this Section 13.5.2, if necessary in Franchisor's discretion, Franchisor shall have the right, but not the obligation, to assume operation of the Area Representative Business until the earlier of: (a) the deceased or incapacitated owner's interest is transferred to a third party approved by Franchisor; or (b) ninety (90) days.  Franchisor will periodically discuss the status with the Area Representative or its heirs.  Franchisor shall be given access to the Area Representative Business, if located within Area Representative's primary domicile, and not be held liable for trespass or any related tort.  Franchisor may charge a management fee as stated in the Confidential Operations Manual from time to time, currently equal to SIX HUNDRED DOLLARS ($600.00) per day, and Franchisor shall be entitled to reimbursement of any expenses Franchisor incurs that are not paid out of the operating cash flow of the Area Representative Business.

## 14.    FRANCHISOR'S RIGHT OF FIRST REFUSAL

### 14.1    Submission of Offer

If Area Representative or any of its owners proposes to sell or transfer, except as allowed in Section 13.2 above, any ownership interest in the Area Representative, or in the Area Representative Business (including assets it owns outside the normal course of its business), Area Representative shall give Franchisor the first right to accept or refuse the offer to purchase. The offer must be a bona fide invitation to purchase, and must be signed and submitted in writing to Franchisor.  The offer shall have all pertinent documents attached, including any contract or due diligence materials.  The offer applies to the assets and interests contemplated in this Section and do not include assets or interests unrelated to the Area Representative Business.

### 14.2    Sale or Transfer to Family Members

Section 14.1 of this Agreement shall be inapplicable in its entirety if the sale or transfer under Section 14.1 is to a family member.  The requirements under Section 13.2 of this Agreement remain in effect and nothing in this Section 14.2 is a waiver to their application.

33

EWC-0039

### 14.3    Franchisor's Right to Purchase

Franchisor shall have thirty (30) days (following the receipt of the offer to purchase) to accept all material terms of Area Representative's offer to purchase. If Franchisor elects to accept the offer, it shall deliver written confirmation to Area Representative. Franchisor has the right to substitute cash for the fair market value of any form of payment proposed in such offer. Franchisor's credit shall be deemed at least equal to the credit of any competing buyer. After providing notice to Area Representative of Franchisor's intent to exercise this right of first refusal, Franchisor shall have up to sixty (60) days to close the purchase. Franchisor shall be entitled to receive from Area Representative all customary representations and warranties given by an area representative as the seller of the assets or such ownership interest or, at Franchisor's election, such representations and warranties contained in the proposal.

### 14.4    Non Exercise of Right of First Refusal

If Franchisor does not exercise its right of first refusal within thirty (30) days from the date of delivery of all such documents, the offer or proposal may be accepted by Area Representative or any of its owners, subject to Franchisor's prior written approval as required by Section 13.2. Should the sale fail to close within one hundred twenty (120) days after the offer is delivered to Franchisor, Franchisor's right of first refusal shall renew and be implemented in accordance with this Section.

## 15.    RESTRICTIONS CONCERNING COMPETITIVE BUSINESSES

### 15.1    No Competition with Franchisor

Area Representative acknowledges that Franchisor would be unable to protect the Trade Secrets and other Confidential Information against unauthorized use or disclosure and would be unable to encourage a free exchange of ideas and information among European Wax Center franchisees and other area representatives if area representatives and members of their immediate families and households were permitted to hold an interest in or perform services for any Competitive Business. Therefore, during the term of this Agreement, for a period of two (2) years after the expiration or termination of the term of this Agreement, regardless of the cause of expiration or termination, neither Area Representative nor any holder of a legal or beneficial interest in Area Representative (or any member of their immediate families and households), nor any officer, director, executive, manager or member of the professional staff of Area Representative, either directly or indirectly, for themselves, or through, on behalf of or in conjunction with any person, partnership, corporation, limited liability company or other business entity, shall:

15.1.1    Divert or attempt to divert any business or customer of the Franchised Center to any Competitive Business, by direct or indirect inducement or otherwise;

15.1.2    Do or perform, directly or indirectly, any other act injurious or prejudicial to the goodwill associated with the Marks or the System;

15.1.3    Carry on, be engaged in or take part in, render services to, or own or share in the earnings of any Competitive Business anywhere in the United States; or

34

15.1.4        Solicit or otherwise attempt to induce or influence any employee or other business associate of Area Representative, Franchisor or any other European Wax Center to compete against, or terminate or modify his, her or its employment or business relationship with, Area Representative, Franchisor or any other European Wax Center.

Following the expiration or termination of the expiration or termination of the term of this Agreement, the geographic scope of the restriction set forth in Section 15.1 shall be limited to the Territory and within 50 miles of any other area representative, company-owned location, or Franchised Center.

### 15.2    Designated Individuals Shall Enter Into Nondisclosure and Non-Competition Agreements

In addition to the restrictive covenants set forth in Section 15.1 above, Franchisor has the right to require any holder of a legal or beneficial interest in Area Representative (and any member of their immediate families or households), and any officer, director, executive, manager or member of the professional staff of Area Representative, to execute a nondisclosure and non-competition agreement, in a form the same as or similar to the Nondisclosure and Non-Competition Agreement attached as Exhibit 2, upon execution of this Agreement or prior to each such person's affiliation with Area Representative or at any time thereafter. Area Representative shall provide Franchisor with originals of all nondisclosure and non-competition agreements signed pursuant to this Section. Franchisor shall be a third party beneficiary with the right to enforce covenants contained in such agreements.

### 15.3    Area Representative Acknowledges Reasonableness of Restrictions

Area Representative acknowledges that the restrictive covenants contained in this Section 15.1 above are essential elements of this Agreement and that without their inclusion, Franchisor would not have entered into this Agreement. Area Representative acknowledges that each of the terms set forth in this Agreement, including the restrictive covenants, is fair and reasonable and is reasonably required for the protection of Franchisor, the Trade Secrets and other Confidential Information, the System and the Marks and Area Representative waives any right to challenge these restrictions as being overly broad, unreasonable or otherwise unenforceable. If, however, a court of competent jurisdiction determines that any such restriction is unreasonable or unenforceable, then Area Representative shall submit to the reduction of any such activity, time period or geographic restriction necessary to enable the court to enforce such restrictions to the fullest extent permitted under applicable law. It is the desire and intent of the parties that the provisions of this Agreement shall be enforced to the fullest extent permissible under the laws and public policies applied in any jurisdiction where enforcement is sought.

### 15.4    Relief for Breaches of Confidentiality, Non-Solicitation and Non-Competition

Area Representative acknowledges that an actual or threatened violation of the covenants contained in this Section 15 will cause Franchisor immediate and irreparable harm, damage and injury, that cannot be fully compensated for by an award of damages or other remedies at law. Accordingly, Franchisor shall be entitled, as a matter of right, to an injunction

EWC-0041

from any court of competent jurisdiction restraining any further violation by Area Representative of this Agreement without any requirement to show any actual damage or to post any bond or other security.  Such right to an injunction shall be cumulative and in addition to, and not in limitation of, any other rights and remedies that Franchisor may have at law or in equity.

## 16.    TERMINATION

### 16.1    By Area Representative

If (i) Area Representative is not currently in material breach of this Agreement or any other agreement between Area Representative and Franchisor and (ii) Franchisor materially breaches this Agreement and fails to cure such breach within forty-five (45) days (or such other reasonable time if additional time is required to cure such breach) after written notice of such breach is delivered to Franchisor, Area Representative may terminate the term of this Agreement.  Such termination shall be effective thirty (30) days after delivery to Franchisor of notice that such material breach has not been cured and Area Representative elects to terminate the term of this Agreement.

Area Representative may also terminate the term of this Agreement in accordance with Section 8.2 or any other provision of this Agreements expressly providing Area Representative the right to terminate the term of this Agreement.

### 16.2    By Franchisor

The term of this Agreement shall terminate automatically upon delivery of notice of termination to Area Representative, if Area Representative or a holder of a legal or beneficial interest:

16.2.1    Has made any material misrepresentation or omission in its application for the Area Representative Business;

16.2.2    Is in material breach of any other agreement entered into with Franchisor and has failed to cure within the time allowed under the particular agreement;

16.2.3    Fails to satisfactorily complete the training program as provided in Section 6.1;

16.2.4    Is convicted of or pleads no contest, where such plea is applicable, to a felony or other crime or offense that is likely to adversely affect the reputation of Area Representative or any of the European Wax Center Marks;

16.2.5    After notices to cure, fails to refrain from activities, behavior or conduct likely to adversely affect the reputation of Franchisor, Area Representative or the System;

16.2.6    Makes any unauthorized use, disclosure or duplication of the Confidential Operations Manual or duplicates or discloses or uses in any unauthorized manner

EWC-0042

any Trade Secret or any portion of the Confidential Information provided to Area Representative by Franchisor;

16.2.7     Surrenders or transfers control of the operation of the Area Representative Business, makes an unauthorized direct or indirect assignment of a Franchised Center or an ownership interest in Area Representative or fails or refuses to assign the interest in Area Representative of a deceased or incapacitated controlling owner thereof as herein required;

16.2.8     Is adjudicated as bankrupt, commits any affirmative act of insolvency or files any action or petition of insolvency, or if a receiver (permanent or temporary) of its property or any part thereof is appointed by a court of competent authority, or if it makes a general assignment for the benefit of its creditors, or if a final judgment remains unsatisfied of record for thirty (30) days or longer (unless supersedeas bond is filed), or if execution is levied against any of your business or property, or if suit to foreclose any lien or mortgage against its Premises or equipment is instituted against you and not dismissed within thirty (30) days, or is not in the process of being dismissed; provided, however, that we reserve the right to be named as trustee or receiver in any voluntary petition for bankruptcy or insolvency filed by you;

16.2.9     Materially misuses or makes an unauthorized use of any Marks or commits any act which can reasonably be expected to materially impair the goodwill associated with any Marks; 

16.2.10     Fails to comply with any requirements under the federal and state franchise laws, including, but not limited to, creating and registering a Disclosure Document, communicating in written, verbal, or other form to any prospective Area Representative any information or presentation which states or suggests a specific level or range of potential or actual sales, income, gross or net profit, other operating costs or expenses unless that information or presentation is identical to that contained in Franchisor's Disclosure Document and other disclosure documents;

16.2.11     Fails to comply with the Development Schedule;

16.2.12     Fails or refuses to make payments of any amounts due Franchisor or its Affiliates, and does not correct such failure or refusal within thirty (30) days after written notice of such failure is delivered to Area Representative; or

16.2.13     Fails or refuses to comply with any other provision of this Agreement, or any mandatory specification, standard or operating procedure prescribed by Franchisor or otherwise in writing, and does not correct such failure within thirty (30) days (or provide proof acceptable to Franchisor that Area Representative has made all reasonable efforts to correct such failure and will continue to make all reasonable efforts to cure until a cure is effected if such failure cannot reasonably be corrected within thirty (30) days) after written notice of such failure to comply is delivered to Area Representative.

Franchisor may also terminate the term of this Agreement in accordance with Section 8.2 or any other provision of this Agreements expressly providing Franchisor the right to terminate the term of this Agreement.

EWC-0043

### 16.3    Termination of Fees and Commission

Upon termination or expiration of the term of this Agreement, Area Representative shall have no further right to receive any portion of the initial franchise fee or Royalty Fees received by Franchisor after the date of such expiration or termination.

### 16.4    Conflicting State Law

To the extent that the provisions of this Agreement provide for periods of notice less than those required by applicable law, or provide for termination, cancellation, non-renewal or the like other than in accordance with applicable law, such provisions shall, to the extent such are not in accordance with applicable law, not be effective, and the provisions of such law shall apply, but only to the extent of such inconsistency.

## 17.    RIGHTS AND DUTIES UPON EXPIRATION OR TERMINATION

### 17.1    Area Representative's Post-Term Obligations

Except as otherwise provided in this Agreement, upon termination or expiration of the term of this Agreement, this Agreement and all rights granted under this Agreement to Area Representative shall terminate and Area Representative shall:

17.1.1    immediately cease to operate the Area Representative Business and shall not thereafter directly or indirectly, represent to the public or hold itself out as a present or former Area Representative of Franchisor; provided, however, that Area Representative's owner(s) is/are permitted to identify themselves as a former owner of the Area Representative on his or her resume and other job and financing application materials;

17.1.2    cease to use the Trade Secrets and other Confidential Information, the System and the Marks including, without limitation, all signs, slogans, symbols, logos, advertising materials, stationery, forms and any other items that display or are associated with the Marks;

17.1.3    upon demand by Franchisor, immediately assign (or, if an assignment is prohibited, sublease for the full remaining term, and on the same terms and conditions as Area Representative's lease) its interest in the lease then in effect for the Approved Location to Franchisor and Area Representative shall furnish Franchisor with evidence satisfactory to Franchisor of compliance with this obligation within thirty (30) days after termination or expiration of this Agreement, and Franchisor has the right to pay rent and other expenses directly to the party to whom such payment is ultimately due;

17.1.4    take such action as may be necessary to cancel or assign to Franchisor, at Franchisor's option, any assumed name or equivalent registration filed with state, city or county authorities that contains the name "EUROPEAN WAX CENTER®" or any other Marks, and Area Representative shall furnish Franchisor with evidence satisfactory to Franchisor of compliance with this obligation within thirty (30) days after termination or expiration of this Agreement;

38

EWC-0044

17.1.5     pay all sums owing to Franchisor and any Affiliate. In the event of termination for any default of Area Representative, such sums shall include, but not be limited to, all damages, costs and expenses, including reasonable attorneys' fees with respect to litigation, arbitration, appellate or bankruptcy proceedings, amounts owed for the purchase of products, and any other amounts due to Franchisor or any Affiliates;

17.1.6     pay to Franchisor all costs and expenses, including reasonable attorneys' fees, incurred by Franchisor subsequent to the termination or expiration of the term of this Agreement in obtaining injunctive or other relief for the enforcement of any provisions of this Agreement;

17.1.7     immediately return to Franchisor the Confidential Operations Manual, Trade Secrets and all other Confidential Information including records, files, instructions, brochures, agreements, disclosure statements and any and all other materials provided by Franchisor to Area Representative;

17.1.8     assign all telephone listings and numbers for the Area Representative Business to Franchisor, notify the telephone company and all listing agencies of the termination or expiration of Area Representative's right to use any telephone numbers or facsimile numbers associated with the Marks in any regular, classified or other telephone directory listing, and shall authorize transfer of same to Franchisor or anyone Franchisor at its discretion may designate; and

17.1.9     comply with all other applicable provisions of this Agreement which expressly or by their nature survive the expiration or termination of the term of this Agreement shall continue in full force and effect subsequent to and notwithstanding its expiration or termination of the term of this Agreement and until they are satisfied in full or by their nature expire.

**17.2     <u>Area Representative Shall Not Unfairly Compete with Franchisor</u>**

17.2.1     If Area Representative operates any other business, Area Representative shall not use any reproduction, counterfeit, copy or colorable imitation of the Marks, either in connection with such other business or the promotion thereof, that is likely to cause confusion, mistake or deception, or that is likely to dilute Franchisor's rights in the Marks. Area Representative shall not utilize in such other business any designation of origin, description or representation that falsely suggests or represents an association or connection with Franchisor. This Section is not intended as an approval of Area Representative's right to operate other businesses and in no way is it intended to contradict those Sections of this Agreement that prohibit such practice.

17.2.2     If Franchisor elects not to receive an assignment or sublease of the Premises, Area Representative shall make such modifications or alterations to the Premises (including assigning telephone and facsimile numbers to Franchisor) immediately upon termination or expiration of this Agreement as may be necessary to prevent any association between Franchisor or the System and any business subsequently operated by Area Representative or others at the Premises.   Area Representative shall make such specific

EWC-0045

additional changes to the Premises as Franchisor may reasonably request for that purpose including, without limitation, removal of all physical and structural features identifying or distinctive to the System. If Area Representative fails or refuses to comply with the requirements of this Section, Franchisor has the right to enter upon the Premises for the purpose of making or causing to be made such changes as may be required, at the expense of Area Representative, which expense Area Representative shall pay upon demand.

### 17.3    Franchisor's Option to Purchase Certain Business Assets

Franchisor has the right (but not the duty), for a period of thirty (30) days after termination or expiration of the term of this Agreement, to purchase any or all assets of the Area Representative Business including leasehold improvements, equipment, supplies and other inventory. The purchase price shall be equal to the assets' fair market value as determined by an independent appraiser that is acceptable to both Franchisor and Area Representative. If Franchisor and Area Representative cannot agree on an independent appraiser, then the procedures set forth in Section 22.7 should be used to choose the independent appraiser. If Franchisor elects to exercise this option to purchase, it has the right to set off all amounts due from Area Representative under this Agreement, if any, against the purchase price.

### 17.4    Survival of Certain Provisions of this Agreement Following Termination or Expiration

All obligations of Franchisor and Area Representative which expressly or by their nature survive the expiration or termination of the term of this Agreement shall continue in full force and effect subsequent to and notwithstanding its expiration or termination of the term of this Agreement and until they are satisfied in full or by their nature expire.

### 18.    ADDRESSES AND PROCEDURES FOR SENDING COMMUNICATIONS

All notices, requests, consents and other communications required or permitted under this Agreement will be in writing (including telex, telefax and telegraphic communication) and will be (as elected by the person giving such notice) hand delivered by messenger or courier service, telecommunicated, or mailed (airmail if international) by registered or certified mail (postage prepaid), return receipt requested addressed to:

| | |
|---|---|
| If to Franchisor: | Franchise Development<br>EWC Franchise Group, Inc.<br>P.O. Box 802208<br>Aventura, Florida 33280 |
| If to Area Representative: | DOC DEVELOPMENT, LLC<br>Attn: Dr. George Y. Lohmann, Jr.<br>3703 Northfield Drive<br>Midland, TX  79707 |

EWC-0046

or to such other address as Area Representative or Franchisor may designate by notice complying with the terms of this Section. Each such notice will be deemed delivered (a) on the date delivered if by personal delivery, (b) on the date telecommunicated if by telegraph, (c) on the date of transmission with confirmed answer back if by telex, telefax or other telegraphic method, or (d) on the date upon which the return receipt is signed or delivery is refused or the notice is designated by the postal authorities as not deliverable, as the case may be, if mailed.

**19.  UNLIMITED GUARANTY AND ASSUMPTION OF OBLIGATIONS**

All holders of a legal or beneficial interest in Area Representative of five percent (5%) or greater shall be required to execute, as of the date of this Agreement, the Unlimited Guaranty and Assumption of Obligations attached as Exhibit 3, through which such holders agree to assume and discharge all of Area Representative's obligations under this Agreement and to be personally liable hereunder for all of the same.

**20.  APPROVALS**

Whenever this Agreement requires the prior approval or consent of Franchisor, Area Representative shall make a timely written request to Franchisor for such approval, and except as otherwise provided in this Agreement, any approval or consent granted shall be effective only if in writing. Area Representative makes no warranties or guarantees upon which Franchisee may rely, and assumes no liability or obligation to Franchisee or any third party to which it would not otherwise be subject, by providing any waiver, approval, advice, consent or services to Franchisee in connection with this Agreement, or by reason of any neglect, delay or denial of any request for approval.

**21.  ENTIRE AGREEMENT**

This Agreement, its exhibits and the documents referred to in this Agreement, constitutes the entire agreement of the parties with respect to the Area Representative Business granted herein and supersedes any prior agreements or understandings between them, whether oral or written. The terms of this Agreement may not be waived or modified except by an express agreement in writing signed by both parties. There are no representations (other than those within Franchisor's European Wax Center Area Representative Disclosure Document), promises, warranties, covenants or undertakings other than those contained in this Agreement. Nothing in this Agreement is intended to disclaim the representations Franchisor made in Franchisor's European Wax Center Area Representative Disclosure Document that was furnished to you. The failure of either Franchisor or Area Representative to enforce, or the delay by either party in enforcing, any of its rights under this Agreement shall not be deemed a continuing waiver or modification thereof and either party may, within the time permitted by applicable law, commence appropriate legal proceedings to enforce any or all of such rights.

**22.  GENERAL CONDITIONS AND PROCEDURES**

**22.1  Choice of Law**

Except to the extent this Agreement or any particular dispute is governed by the U.S. Trademark Act of 1946 or other federal law, this Agreement shall be governed by and

EWC-0047

construed in accordance with the laws of the State of Florida (without reference to its conflict of laws principles), excluding any law regulating the sale of franchises or governing the relationship between a franchisor and area representative, unless the jurisdictional requirements of such laws are met independently without reference to this Section. The Federal Arbitration Act shall govern all matters subject to arbitration. References to any law refer also to any successor laws and to any published regulations for such law as in effect at the relevant time. References to a governmental agency also refer to any regulatory body that succeeds the function of such agency.

### 22.2    Consent to Jurisdiction

Any action brought by either party, except those claims required to be submitted to arbitration, shall be brought in the appropriate state or federal court located in or serving Miami-Dade County, Florida. The parties waive all questions of personal jurisdiction or venue for the purposes of carrying out this provision. The parties hereby submit to service of process by registered mail, return receipt requested or by any other manner provided by law. Claims for injunctive relief may be brought by Franchisor where Area Representative is located. This exclusive choice of jurisdiction and venue provision shall not restrict the ability of the parties to confirm or enforce judgments or arbitration awards in any appropriate jurisdiction.

### 22.3    Cumulative Rights and Remedies

No right or remedy conferred upon or reserved to Franchisor or Area Representative by this Agreement is intended to be, nor shall be deemed, exclusive of any other right or remedy herein or by law or equity provided or permitted, but each shall be in addition to every other right or remedy. Nothing contained herein shall bar Franchisor's right to obtain injunctive relief against threatened conduct that may cause it loss or damages, including obtaining restraining orders and preliminary and permanent injunctions.

### 22.4    Limitation of Claims

**Any claim concerning the Area Representative Business or this Agreement or any related agreement will be barred unless an action for a claim is commenced within one (1) year from the date on which Area Representative knew or should have known, in the exercise of reasonable diligence, of the facts giving rise to the claim.**

### 22.5    Limitation of Damages

AREA REPRESENTATIVE WAIVES, TO THE FULLEST EXTENT PERMITTED BY LAW, ANY RIGHT OR CLAIM FOR ANY PUNITIVE OR EXEMPLARY DAMAGES AGAINST FRANCHISOR AND AGREES THAT IF THERE IS A DISPUTE WITH FRANCHISOR, AREA REPRESENTATIVE WILL BE LIMITED TO THE RECOVERY OF ACTUAL DAMAGES SUSTAINED BY IT INCLUDING REASONABLE ACCOUNTING AND LEGAL FEES. AREA REPRESENTATIVE WAIVES AND DISCLAIMS ANY RIGHT TO CONSEQUENTIAL DAMAGES IN ANY ACTION OR CLAIM AGAINST FRANCHISOR CONCERNING THIS AGREEMENT OR ANY RELATED AGREEMENT. IN ANY CLAIM OR ACTION BROUGHT BY AREA REPRESENTATIVE AGAINST FRANCHISOR CONCERNING THIS AGREEMENT, AREA

42

EWC-0048

REPRESENTATIVE'S CONTRACT DAMAGES SHALL NOT EXCEED AND SHALL BE LIMITED TO REFUND OF AREA REPRESENTATIVE'S LICENSE FEE AND COMMISSION TO WHICH AREA REPRESENTATIVE MAY BE ENTITLED UNDER THIS AGREEMENT.

### 22.6    Waiver of Jury Trial

**AREA REPRESENTATIVE AND FRANCHISOR EACH IRREVOCABLY WAIVE TRIAL BY JURY IN ANY ACTION, WHETHER AT LAW OR EQUITY, BROUGHT BY EITHER OF THEM.**

### 22.7    Arbitration

This Agreement evidences a transaction involving commerce and, therefore, the Federal Arbitration Act, Title 9 of the United States Code is applicable to the subject matter contained herein. Except for controversies or claims relating to the ownership of any of Franchisor's Marks or the unauthorized use or disclosure of Franchisor's Trade Secrets or other Confidential Information and except for claims for injunctive relief, all disputes arising out of or relating to this Agreement or to any other agreements between the parties, or with regard to interpretation, formation or breach of this or any other agreement between the parties, shall be settled by binding arbitration conducted in Miami-Dade County, Florida, in accordance with the Commercial Arbitration Rules of the American Arbitration Association then in effect.  The proceedings will be held by a single arbitrator agreed upon by the parties or otherwise appointed by the Circuit Court for the State of Florida located in or serving Miami-Dade County, Florida. The decision of the arbitrator shall be final and binding upon the parties.  Judgment upon the award rendered by the arbitrator may be entered in any court having personal and subject matter jurisdiction.

Area Representative acknowledges that it has read the terms of this binding arbitration provision and affirms that this provision is entered into willingly and voluntarily and without any fraud, duress or undue influence on the part of Franchisor or any of Franchisor's agents or employees.

### 22.8    Force Majeure

Whenever a period of time is provided in this Agreement for either party to perform any act, except for Franchisee's payment of monies to Franchisor, neither party shall be liable nor responsible for any delays due to strikes, lockouts, casualties, acts of God, war, terrorism, governmental regulation or control or other causes beyond the reasonable control of the parties, and the time period for the performance of such act shall be extended for the amount of time of the delay.  This clause shall not result in an extension of the term of this Agreement.

### 22.9    Timing Is Of The Essence

Time is of the essence.  Except as set forth in Section 22.8, failure to perform any act within the time required or permitted by this Agreement shall be a breach of this Agreement.

43

**22.10** **Withholding Payments**

22.10.1    Area Representative shall not, for any reason, withhold payment of any amounts due to Franchisor or to any of its Affiliates. Area Representative shall not withhold or offset any amounts, damages or other monies allegedly due to Area Representative against any amounts due to Franchisor. The right to set off is hereby expressly waived by Area Representative. No endorsement or statement on any payment for less than the full amount due to Franchisor will be construed as an acknowledgment of payment in full, or an accord and satisfaction, and Franchisor has the right to accept and cash any such payment without prejudice to Franchisor's right to recover the full amount due, or pursue any other remedy provided in this Agreement or by law.

22.10.2    Franchisor has the right to apply any payments made by Area Representative against any of Area Representative's past due indebtedness as Franchisor deems appropriate. Franchisor may set off, against amounts owed to Area Representative, amounts due under this Agreement by Area Representative to Franchisor.

**22.11** **Further Assurances**

Each party to this Agreement will execute and deliver such further instruments, contracts, forms or other documents, and will perform such further acts, as may be necessary or desirable to perform or complete any term, covenant or obligation contained in this Agreement.

**22.12** **Third-Party Beneficiaries**

Anything to the contrary notwithstanding, nothing in this Agreement is intended, nor shall be deemed, to confer upon any person or legal entity other than Franchisor or Area Representative, and their respective successors and assigns as may be contemplated by this Agreement, any rights or remedies under this Agreement.

**23.** **REMEDIES IN THE EVENT OF BREACH OF THIS AGREEMENT**

Area Representative and Franchisor agree if any legal proceedings are brought for the enforcement of this Agreement, in addition to any other relief to which the successful or prevailing party may be entitled, the successful or prevailing party will be entitled to recover attorneys' fees, investigative fees, administrative fees billed by such party's attorneys, court costs and all expenses, including, without limitation, all fees, taxes, costs and expenses incident to arbitration, appellate, and post-judgment proceedings, incurred by the successful or prevailing party in that action or proceeding.

**24.** **SEVERABILITY AND CONSTRUCTION**

**24.1** **Severability**

Each section, part, term and/or provision of this Agreement shall be considered severable; and if, for any reason, any section, part, term and/or provision herein is determined to be invalid and contrary to, or in conflict with, any existing or future law or regulation by a court or agency having valid jurisdiction, such shall not impair the operation of, or have any other

EWC-0050

effect upon, such other portions, sections, parts, terms and/or provisions of this Agreement as may remain otherwise intelligible, and the latter shall continue to be given full force and effect and bind the parties hereto; and said invalid sections, parts, terms and/or provisions shall be deemed not to be a part of this Agreement; provided, however, that if Franchisor determines that such finding of invalidity or illegality adversely affects the basic consideration of this Agreement, Franchisor, at its option, may terminate the term of this Agreement.

### 24.2   Successors

Anything to the contrary herein notwithstanding, nothing in this Agreement is intended, nor shall be deemed, to confer upon any Person other than Franchisor or Area Representative and such of their respective successors and assigns as may be contemplated by Section 13, any rights or remedies under or by reason of this Agreement.

### 24.3   Headings

All captions in the Agreement are intended solely for the convenience of the parties, and none shall be deemed to affect the meaning or construction of any provision hereof.

## 25.   THIS AGREEMENT MAY BE SIGNED IN ONE OR MORE COUNTERPARTS

This Agreement may be executed in one (1) or more counterparts, each of which will be deemed an original, but all of which taken together will constitute one (1) and the same instrument. Confirmation of execution by electronic transmission of a facsimile signature page will be binding upon any party so confirming.

## 26.   ACKNOWLEDGMENTS

### 26.1   Receipt of this Agreement and the Franchise Disclosure Document

Area Representative represents and acknowledges that it has received, read and understands this Agreement and Franchisor's Disclosure Document; and that Franchisor has accorded Area Representative ample time and opportunity to consult with advisors of its own choosing about the potential benefits and risks of entering into this Agreement. Area Representative represents and acknowledges that it has received, at least fourteen (14) calendar days prior to the date on which this Agreement was executed, the Disclosure Document required by the Franchise Rules.

### 26.2   Consultation by Area Representative

Area Representative represents that it has been urged to consult with its own advisors with respect to the legal, financial and other aspects of this Agreement, the business franchised hereby and the prospects for that business. Area Representative represents that it has either consulted with such advisors or has deliberately declined to do so.

45

EWC-0051

### 26.3    True and Accurate Information

Area Representative represents that all information set forth in any and all applications, financial statements and submissions to Franchisor is true, complete and accurate in all respects, and Area Representative acknowledges that Franchisor is relying upon the truthfulness, completeness and accuracy of such information.

### 26.4    Risk

Area Representative represents that it has conducted an independent investigation of the business contemplated by this Agreement and acknowledges that, like any other business, an investment in the Area Representative Business involves business risks and that the success of the venture is dependent, among other factors, upon the business abilities and efforts of Area Representative. Franchisor makes no representations or warranties, express or implied, in this Agreement or otherwise, as to the potential success of the business venture contemplated hereby.

### 26.5    No Guarantee of Success

AREA REPRESENTATIVE ACKNOWLEDGES THAT NO REPRESENTATIONS, PROMISES, INDUCEMENTS, GUARANTEES, WARRANTIES OR ESTIMATES OF ANY KIND REGARDING FINANCING, PROFITS, SALES, COSTS OR EXPENSES OF AREA REPRESENTATIVES GENERALLY OR OF ANY AREA REPRESENTATIVE BUSINESS WERE MADE BY OR ON BEHALF OF FRANCHISOR WHICH HAVE LED AREA REPRESENTATIVE TO ENTER INTO THIS AGREEMENT. AREA REPRESENTATIVE UNDERSTANDS THAT WHETHER AREA REPRESENTATIVE SUCCEEDS IN THE AREA REPRESENTATIVE BUSINESS IS DEPENDENT UPON AREA REPRESENTATIVE'S EFFORTS, BUSINESS JUDGMENTS, THE PERFORMANCE OF AREA REPRESENTATIVE'S EMPLOYEES, MARKET CONDITIONS AND VARIABLE FACTORS BEYOND FRANCHISOR'S CONTROL OR INFLUENCE. AREA REPRESENTATIVE FURTHER UNDERSTANDS THAT SOME AREA REPRESENTATIVES ARE MORE, OR LESS SUCCESSFUL THAN OTHER AREA REPRESENTATIVES, AND THAT FRANCHISOR MADE NO REPRESENTATION THAT AREA REPRESENTATIVE WILL DO AS WELL AS ANY OTHER AREA REPRESENTATIVE.

### 26.6    No Violation of Other Agreements

Area Representative represents that its execution of this Agreement will not breach any other agreement or commitment to which Area Representative or any holder of a legal or beneficial interest in Area Representative is a party.

46

IN WITNESS WHEREOF, the parties hereto, intending to be legally bound hereby, have duly executed and delivered this Agreement in multiple copies the date and year first above written.

EWC FRANCHISE GROUP, INC.

By: _____

Name: _____

Title: _____


DOC DEVELOPMENT, LLC

By: _____

Name: _____

Title: _____

47

EWC-0053

## SCHEDULE 1 TO THE AREA REPRESENTATIVE AGREEMENT

## TERRITORY

**New Mexico, Oklahoma, Louisiana, and Texas.**
**The Texas territory includes all counties EXCEPT those listed below:**

| | | | | |
|---|---|---|---|---|
| Kimball | Gillespie | Victoria | Cass | Palo Pinto |
| Sutton | Goliad | Calhoun | Morris | Parke |
| Schleicher | Live Oak | Tyler | Titus | Rains |
| Menard | Llano | Jasper | Camp | Rockwall |
| McColloch | Mason | Newton | Upshur | Somervell |
| Gonzales | Maverick | Hardin | Marion | Tarrant |
| Guadalupe | McMullen | Orange | Harrison | Van Zandt |
| Hays | Medina | Jefferson | Panola | Wise |
| Hidalgo | Nueces | Burleson | Shelby | |
| Jim Hogg | Real | Brazos | Rusk | |
| Jim Wells | Refugio | Madison | Gregg | |
| Karnes | San Patricio | Robertson | Nacagdoches | |
| Kendall | Starr | Leon | Grayson | |
| Kenedy | Travis | Milam | Montague | |
| Kerr | Uvalde | Bell | Clay | |
| Kinney | Val Verde | Falls | Anderson | |
| Kleberg | Webb | Limestone | Bosque | |
| La Salle | Willacy | McLennan | Collin | |
| Lavaca | Williamson | Coryell | Comanche | |
| Lee | Wilson | Mills | Cooke | |
| Aransas | Zapata | Sansaba | Dallas | |
| Atascosa | Zavala | Lampasas | Delta | |
| Bandera | Walker | Fort Bend | Denton | |
| Bastrop | Grines | Houston | Ellis | |
| Bee | San Jacinto | Trinity | Erath | |
| Bexar | Polk | Angelina | Fannin | |
| Blanco | Montgomery | Sabine | Freestone | |
| Brooks | Washington | San | Hamilton | |
| Burnet | Waller | Augustine | Henderson | |
| Caldwell | Austin | Henderson | Hill | |
| Cameron | Colorado | Smith | Hood | |
| Comal | Harris | Cherokee | Hopkin | |
| DeWitt | Liberty | Freestone | Hunt | |
| Dimmit | Chambers | Anderson | Jack | |
| Duval | Galveston | Wood | Johnson | |
| Edwards | Brazoria | Franklin | Kaufman | |
| Fayette | Wharton | Red River | Lamar | |
| Rio | Jackson | Bowie | Navarro | |
| | Matagorda | | | |

EWC-0054

## EXHIBIT 1 TO THE AREA REPRESENTATIVE AGREEMENT

### GENERAL RELEASE

THIS GENERAL RELEASE is made and given on this _____ day of _____, 20_____ by _____, ("RELEASOR") an individual/corporation/ limited liability company/partnership with a principal address of _____, in consideration of:

_____ The execution by EWC Franchise Group, Inc., a Florida corporation ("RELEASEE"), of a successor Area Representative Agreement or other renewal documents renewing the area representative franchise (the "Area Representative") granted to RELEASOR by RELEASEE pursuant to that certain Area Representative Agreement (the "Area Representative Agreement") between RELEASOR and RELEASEE; or

_____ RELEASEE'S consent to RELEASOR'S assignment of its rights and duties under the Area Representative Agreement; or

_____ RELEASEE'S consent to RELEASOR'S assumption of rights and duties under the Area Representative Agreement;

and other good and valuable consideration, and accordingly RELEASOR hereby releases and discharges RELEASEE, RELEASEE'S officers, directors, shareholders and employees (in their corporate and individual capacities), and RELEASEE'S successors and assigns, from any and all causes of action, suits, debts, damages, judgments, executions, claims and demands whatsoever, in law or in equity, that RELEASOR and RELEASOR'S heirs, executors, administrators, successors and assigns had, now have or may have, upon or by reason of any matter, cause or thing whatsoever from the beginning of the world to the date of this RELEASE arising out of or related to the Area Representative or the Area Representative Agreement, including, without limitation, claims arising under federal, state and local laws, rules and ordinances.

This General Release shall not be amended or modified unless such amendment or modification is in writing and is signed by RELEASOR.

IN WITNESS WHEREOF, RELEASOR has executed this General Release as of the date first above written.

RELEASOR: _____
(type/print name)
By: ***DO NOT SIGN – EXHIBIT ONLY***

Name: _____

Title: _____
(or, if an individual)
Signed: _____

Name printed: _____

EWC-0055

**ACKNOWLEDGMENT**

State of _____)
                             ) ss
County of _____)

On this ____ day of _____, 20____ before me personally came _____, known to me to be the same person whose name is signed to the foregoing General Release, and acknowledged the execution thereof for the uses and purposes therein set forth, [and who did swear and say that he/she is the _____ (title) of _____

(company name), and he/she has the authority to execute said General Release].

IN WITNESS WHEREOF, I have hereunto set my hand and official seal.

(NOTARIAL SEAL)

_____
Notary Public
My Commission expires:

## EXHIBIT 2 TO THE AREA REPRESENTATIVE AGREEMENT

### NONDISCLOSURE AND NON-COMPETITION AGREEMENT

This Nondisclosure and Non-Competition Agreement (this "Agreement") is made as of the _____ day of _____, 200___, is by and between _____, ("Area Representative") (d/b/a a European Wax Center Area Representative) and _____ ("Individual").

### W I T N E S S E T H:

WHEREAS, Area Representative is a party to that certain Area Representative Agreement dated _____, 20__ ("Area Representative Agreement") by and between Area Representative and EWC Franchise Group, Inc. ("Company"); and

WHEREAS, Area Representative desires Individual to have access to and review certain Trade Secrets and other Confidential Information, which are more particularly described below; and

WHEREAS, Area Representative is required by the Area Representative Agreement to have Individual execute this Agreement prior to providing Individual access to said confidential materials; and

WHEREAS, Individual understands the necessity of not disclosing any such information to any other party or using such information to compete against Company, Area Representative or any other Area Representative of Company in any business that (i) offers (or grants franchises or licenses to others to operate a business that offers) hair removal services or other services the same or similar to those provided by Area Representative or (ii) in which Trade Secrets and other Confidential Information (as defined below) could be used to the disadvantage of Area Representative, or Company, any affiliate of Company or Company's other Area Representatives (a "Competitive Business"); provided, however, that the term "Competitive Business" shall not apply to any business operated by Area Representative under a Area Representative Agreement with Company.

NOW, THEREFORE, in consideration of the mutual promises and undertakings set forth herein, and intending to be legally bound hereby, the parties hereby mutually agree as follows:

1. **Trade Secrets and Confidential Information**

Individual understands Area Representative possesses and will possess Trade Secrets and other Confidential Information that are important to its business. For the purposes of this Agreement, a "Trade Secret" is information in any form (including, but not limited to, materials and techniques, technical or non-technical data, formulas, patterns, compilations, programs, devices, methods, techniques, drawings, processes, financial data, financial plans, product plans, passwords, lists of actual or potential customers or suppliers) related to or used in European Wax Center franchises that is not commonly known by or available to the public and that information: (a) derives economic value, actual or potential, from not being generally

**EWC-0057**

known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and (b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy. For the purposes of this Agreement "Confidential Information" means technical and non-technical information used in or related to European Wax Centers that is not commonly known by or available to the public, including, without limitation, Trade Secrets and information contained in the Confidential Operations Manual and training guides and materials. In addition, any other information identified as confidential when delivered by Franchisor shall be deemed Confidential Information. Confidential Information shall not include, however, any information that: (a) is now or subsequently becomes generally available to the public through no fault of Area Representative; (b) Area Representative can demonstrate was rightfully in its possession, without obligation of nondisclosure, prior to disclosure pursuant to this Agreement; (c) is independently developed without the use of any Confidential Information; or (d) is rightfully obtained from a third party who has the right, without obligation of nondisclosure, to transfer or disclose such information. Any information expressly designated by Company as "Trade Secrets" or "Confidential Information" shall be deemed such for all purposes of this Agreement, but the absence of designation shall not relieve Individual of his or her obligations hereunder in respect of information otherwise constituting Trade Secrets or Confidential Information. Individual understands Area Representative's providing of access to the Trade Secrets and other Confidential Information creates a relationship of confidence and trust between Individual and Area Representative with respect to the Trade Secrets and other Confidential Information.

### 2. <u>Confidentiality/Non-Disclosure</u>

(a)     Individual shall not communicate or divulge to (or use for the benefit of) any other person, firm, association, or corporation, with the sole exception of Area Representative, now or at any time in the future, any Trade Secrets or other Confidential Information. At all times from the date of this Agreement, Individual must take all steps reasonably necessary and/or requested by Area Representative to ensure that the Confidential Information and Trade Secrets are kept confidential pursuant to the terms of this Agreement. Individual must comply with all applicable policies, procedures and practices that Area Representative has established and may establish from time to time with regard to the Confidential Information and Trade Secrets.

(b)     Individual's obligations under paragraph 2(a) of this Agreement shall continue in effect after termination of Individual's relationship with Area Representative, regardless of the reason or reasons for termination, and whether such termination is voluntary or involuntary, and Area Representative is entitled to communicate Individual's obligations under this Agreement to any future customer or employer to the extent deemed necessary by Area Representative for protection of its rights hereunder and regardless of whether Individual or any of its affiliates or assigns becomes an investor, partner, joint venturer, broker, distributor or the like in the European Wax Center system.

### 3. <u>Non-Competition</u>

(a)     Individual acknowledges that Area Representative and Company would be unable to protect the Trade Secrets and other Confidential Information against unauthorized use

or disclosure and would be unable to encourage a free exchange of ideas and information among European Wax Center franchisees and other area representatives if Individual and members of Individual's immediate family and household were permitted to hold an interest in or perform services for any Competitive Business. Therefore, during the term of the Area Representative Agreement, and for a period of two (2) years after the expiration or termination of the Area Representative Agreement, regardless of the cause of expiration or termination, neither Individual nor any member of Individual's immediate family and household, shall, either directly or indirectly, for themselves, or through, on behalf of or in conjunction with any person, partnership, corporation, limited liability company or other business entity, shall:

        (i)     Divert or attempt to divert any business or customer of the Franchised Center to any Competitive Business, by direct or indirect inducement or otherwise;

        (ii)    Do or perform, directly or indirectly, any other act injurious or prejudicial to the goodwill associated with the Marks (as defined below) or the System (as defined below);

        (iii)   Carry on, be engaged in or take part in, render services to, or own or share in the earnings of any Competitive Business anywhere in the United States; or

        (iv)   Solicit or otherwise attempt to induce or influence any employee or other business associate of Area Representative, Company or any other European Wax Center to compete against, or terminate or modify his, her or its employment or business relationship with, Area Representative, Company or any other European Wax Center.

Following the expiration or termination of the expiration or termination of the Area Representative Agreement, the geographic scope of the restriction set forth in Section 3(a)(iii) above shall be limited to the Area Representative's Territory and within 50 miles of any other area representative, company-owned location, or Franchised Center.

"Marks" means the trademarks "European Wax Center®," and such other trade names, trademarks, service marks, trade dress, designs, graphics, logos, emblems, insignia, fascia, slogans, drawings and other commercial symbols as Company may designate to be used in connection with European Wax Centers and by the Area Representative.

"System" means the uniform standards, methods, procedures and specifications, revisions or modifications Franchisor advances for the operation of a European Wax Center.

"Franchised Center" means a European Wax Center Franchisor grants to a Franchisee under a franchise agreement.

        (b)    If Individual operates any other business, Individual shall not use any reproduction, counterfeit, copy or colorable imitation of the Marks, either in connection with such other business or the promotion thereof, that is likely to cause confusion, mistake or deception, or that is likely to dilute Franchisor's rights in the Marks. Individual shall not utilize in such other business any designation of origin, description or representation that falsely suggests or represents an association or connection with Company. This Section is not intended

EWC-0059

as an approval of Individual's right to operate other businesses and in no way is it intended to contradict those Sections of this Agreement that prohibit such practice.

**4.    Reasonableness of Restrictions**

Individual acknowledges that each of the terms set forth herein, including the restrictive covenants, is fair and reasonable and is reasonably required for the protection of Area Representative, Company, and Company's Trade Secrets and other Confidential Information, the System and the Marks, and Individual waives any right to challenge these restrictions as being overly broad, unreasonable or otherwise unenforceable. If, however, a court of competent jurisdiction determines that any such restriction is unreasonable or unenforceable, then Individual shall submit to the reduction of any such activity, time period or geographic restriction necessary to enable the court to enforce such restrictions to the fullest extent permitted under applicable law. It is the desire and intent of the parties that the provisions of this Agreement shall be enforced to the fullest extent permissible under the laws and public policies applied in any jurisdiction where enforcement is sought.

**5.    Relief for Breaches of Confidentiality, Non-Solicitation and Non-Competition**

Individual further acknowledges that an actual or threatened violation of the covenants contained in this Agreement will cause Area Representative and Company immediate and irreparable harm, damage and injury that cannot be fully compensated for by an award of damages or other remedies at law. Accordingly, Area Representative and Company shall be entitled, as a matter of right, to an injunction from any court of competent jurisdiction restraining any further violation by Individual of this Agreement without any requirement to show any actual damage or to post any bond or other security. Such right to an injunction shall be cumulative and in addition to, and not in limitation of, any other rights and remedies that Area Representative and Company may have at law or in equity.

**6.    Miscellaneous**

(a)    This Agreement constitutes the entire Agreement between the parties with respect to the subject matter hereof. This Agreement supersedes any prior agreements, negotiations and discussions between Individual and Area Representative. This Agreement cannot be altered or amended except by an agreement in writing signed by Individual and the duly authorized representatives of Area Representative and Company.

(b)    Individual agrees if any legal proceedings are brought for the enforcement of this Agreement, in addition to any other relief to which the successful or prevailing party may be entitled, the successful or prevailing party shall be entitled to recover attorneys' fees, investigative fees, administrative fees billed by such party's attorneys, court costs and all expenses, including, without limitation, all fees, taxes, costs and expenses incident to arbitration, appellate, and post-judgment proceedings incurred by the successful or prevailing party in that action or proceeding.

(c)    This Agreement shall be effective as of the date this Agreement is executed and shall be binding upon the successors and assigns of Individual and shall inure to the benefit of Area Representative, its subsidiaries, successors and assigns.

(d)     The failure of either party to insist in any one (1) or more instances upon performance of any terms and conditions of this Agreement shall not be construed a waiver of future performance of any such term, covenant or condition of this Agreement and the obligations of either party with respect thereto shall continue in full force and effect.

(e)     The paragraph headings in this Agreement are included solely for convenience and shall not affect, or be used in connection with, the interpretation of this Agreement.

(f)     In the event that any part of this Agreement shall be held to be unenforceable or invalid, the remaining parts hereof shall nevertheless continue to be valid and enforceable as though the invalid portions were not a part hereof.

(g)     This Agreement may be modified or amended only by a written instrument duly executed by Individual and Company.

(h)     The existence of any claim or cause of action Individual might have against Area Representative or Company will not constitute a defense to the enforcement by Area Representative or Company of this Agreement.

(i)     This Agreement represents the entire understanding and agreement between Individual and Area Representative with respect to the subject matter contained in this Agreement, and supersedes all other negotiations, understandings and representations (if any) made by and between Individual and Area Representative.

(j)     Except as otherwise expressly provided in this Agreement, no remedy conferred upon Area Representative or Company pursuant to this Agreement is intended to be exclusive of any other remedy, and each and every such remedy shall be cumulative and shall be in addition to every other remedy given pursuant to this Agreement or now or hereafter existing at law or in equity or by statute or otherwise.  No single or partial exercise by any party of any right, power or remedy pursuant to this Agreement shall preclude any other or further exercise thereof.

(k)     Individual acknowledges that Individual's compliance with the terms of this Agreement is also critical to Company.  Accordingly, Individual agrees and acknowledges that Company shall be a third party beneficiary of Individual's obligations under this Agreement and Company shall be entitled to all rights and remedies conferred upon Area Representative under this Agreement, which Company may enforce directly against Individual with or without the consent or joinder of Area Representative.

**INDIVIDUAL CERTIFIES THAT HE OR SHE HAS READ THIS AGREEMENT CAREFULLY, AND UNDERSTANDS AND ACCEPTS THE OBLIGATIONS THAT IT IMPOSES WITHOUT RESERVATION.  NO PROMISES OR REPRESENTATIONS HAVE BEEN MADE TO SUCH PERSON TO INDUCE THE SIGNING OF THIS AGREEMENT.**

IN WITNESS WHEREOF, Area Representative has caused this Agreement to be executed by its duly authorized officer, and Individual has executed this Agreement, all being

done in duplicate originals with one (1) original being delivered to each party as of the day and year first above written.

WITNESS:                                    AREA REPRESENTATIVE:

_____                   By:  ***DO NOT SIGN – EXHIBIT ONLY***  

                                            Its:  _____

                                            INDIVIDUAL:

                                            Signature:  ***DO NOT SIGN – EXHIBIT ONLY***  

                                            Printed Name:  _____

EWC-0062

## EXHIBIT 3 TO THE AREA REPRESENTATIVE AGREEMENT

## UNLIMITED GUARANTY AND ASSUMPTION OF OBLIGATIONS

THIS UNLIMITED GUARANTY AND ASSUMPTION OF OBLIGATIONS is given this _____ day of _____, 20_____, by _____.

In consideration of, and as an inducement to, the execution of that certain Area Representative Agreement of even date herewith ("Agreement") by EWC Franchise Group, Inc. ("Franchisor"), each of the undersigned hereby personally and unconditionally guarantees to Franchisor and its successors and assigns, for the term of the Agreement and thereafter as provided in the Agreement, that _____ ("Area Representative") shall punctually pay and perform each and every undertaking, agreement and covenant set forth in the Agreement. Each of the undersigned shall be personally bound by, and personally liable for, Area Representative's breach of any provision in the Agreement, including those relating to monetary obligations and obligations to take or refrain from taking specific actions or engaging in specific activities, such as those contemplated by Sections 15 of the Agreement. Each of the undersigned waives: (a) acceptance and notice of acceptance by Franchisor of the foregoing undertakings; (b) notice of demand for payment of any indebtedness or non-performance of any obligations hereby guaranteed; (c) protest and notice of default to any party with respect to the indebtedness or non-performance of any obligations hereby guaranteed; (d) any right it may have to require that an action be brought against Area Representative or any other person as a condition of liability; and (e) any and all other notices and legal or equitable defenses to which it may be entitled.

Each of the undersigned consents and agrees that: (a) its direct and immediate liability under this Guaranty shall be joint and several; (b) it shall render any payment or performance required under the Agreement upon demand if Area Representative fails or refuses punctually to do so; (c) such liability shall not be contingent or conditioned upon pursuit by Franchisor of any remedies against Area Representative or any other person; and (d) such liability shall not be diminished, relieved or otherwise affected by any extension of time, credit or other indulgence which Franchisor may from time to time grant to Area Representative or to any other person including, without limitation, the acceptance of any partial payment or performance, or the compromise or release of any claims, none of which shall in any way modify or amend this Guaranty, which shall be continuing and irrevocable during the term of this Agreement.

This Guaranty represents the entire agreement and understanding of these parties concerning the subject matter hereof, and supersedes all other prior agreements, understandings, negotiations and discussions, representations, warranties, commitments, proposals, offers and contracts concerning the subject matter hereof, whether oral or written.

Successors and Assigns; Death of Guarantor. This Guaranty shall be binding upon Guarantor and his or her heirs, executors, administrators, successors and assigns and shall inure to the benefit of Franchisor and its successors, endorsees, transferees and assigns. Without limiting any other provision hereof, Guarantor expressly agrees that Guarantor's death shall not serve as a revocation of or otherwise affect the guaranty made hereunder and that Guarantor's

EWC-0063

estate and heirs shall continue to be liable hereunder with respect to any Guaranteed Obligations created or arising after Guarantor's death.

The validity, interpretation and enforcement of this Guaranty and any dispute arising out of the relationship between Guarantor and Franchisor, whether in contract, tort, equity or otherwise, shall be governed by the internal laws of the State of Florida (without giving effect to principles of conflicts of law).

Guarantor hereby irrevocably consents and submits to the non-exclusive jurisdiction of the Courts of the State of Florida and the United States District Court located in or serving Miami-Dade County, Florida and waives any objection based on venue or forum non conveniens with respect to any action instituted therein arising under this Guaranty or any of the other Franchising Agreements or in any way connected with or related or incidental to the dealings of Guarantor and Franchisor in respect of this Guaranty or any of the other Franchising Agreements or the transactions related hereto or thereto, in each case whether now existing or hereafter arising and whether in contract, tort, equity or otherwise, and agrees that any dispute arising out of the relationship between Guarantor or Area Representative and Franchisor or the conduct of any such persons in connection with this Guaranty, the other Franchising Agreements or otherwise shall be heard only in the courts described above (except that Franchisor shall have the right to bring any action or proceeding against Guarantor or his or her property in the courts of any other jurisdiction which Franchisor deems necessary or appropriate in order to realize on any collateral at any time granted by Area Representative or Guarantor to Franchisor or to otherwise enforce its rights against Guarantor or his or her property).

IN WITNESS WHEREOF, this Guaranty has been entered into the day and year first before written.

**PERSONAL GUARANTOR**                              **PERSONAL GUARANTOR**

***DO NOT SIGN – EXHIBIT ONLY***                    ***DO NOT SIGN – EXHIBIT ONLY***
Personally and Individually (Printed Name)          Personally and Individually (Printed Name)


Personally and Individually (Signature)             Personally and Individually (Signature)

HOME ADDRESS                                        HOME ADDRESS




TELEPHONE NO.: _____                       TELEPHONE NO.: _____
PERCENTAGE OF                                       PERCENTAGE OF
OWNERSHIP IN AREA                                   OWNERSHIP IN AREA
REPRESENTATIVE: _____                      REPRESENTATIVE: _____

**EWC-0064**

**PERSONAL GUARANTOR**

_____
Personally and Individually (Printed Name)

_____
Personally and Individually (Signature)

HOME ADDRESS

_____

_____

_____

_____

TELEPHONE NO.: _____
PERCENTAGE OF
OWNERSHIP IN AREA
REPRESENTATIVE: _____

**PERSONAL GUARANTOR**

_____
Personally and Individually (Printed Name)

_____
Personally and Individually (Signature)

HOME ADDRESS

_____

_____

_____

_____

TELEPHONE NO.: _____
PERCENTAGE OF
OWNERSHIP IN AREA
REPRESENTATIVE: _____

**PERSONAL GUARANTOR**

_____
Personally and Individually (Printed Name)

_____
Personally and Individually (Signature)

HOME ADDRESS

_____

_____

_____

_____

TELEPHONE NO.: _____
PERCENTAGE OF
OWNERSHIP IN AREA
REPRESENTATIVE: _____

**PERSONAL GUARANTOR**

_____
Personally and Individually (Printed Name)

_____
Personally and Individually (Signature)

HOME ADDRESS

_____

_____

_____

_____

TELEPHONE NO.: _____
PERCENTAGE OF
OWNERSHIP IN AREA
REPRESENTATIVE: _____

**EWC-0065**

## EXHIBIT 4 TO THE AREA REPRESENTATIVE AGREEMENT

### HOLDERS OF LEGAL OR BENEFICIAL INTEREST IN AREA REPRESENTATIVE; OFFICERS, DIRECTORS, MANAGERS AND TRUSTEES

#### Holders of Legal or Beneficial Interest:

Name:   DOC Marketing, LLC
Position/Title:
Home Address:
3703 Northfield Drive
Midland, TX  79707

Telephone No.:   432-520-9888
Email address:   Jojolo8@aim.com
Percentage of ownership:   100%

Name:   George Y. Lohmann, Jr.
Position/Title:
Home Address:
3703 Northfield Drive
Midland, TX  79707

Telephone No.:   432-520-9888
Email address:   Jojolo8@aim.com
Percentage of ownership:   100% (in DOC Marketing, LLC)

Name:
Position/Title:
Home Address:


Telephone No.:
Email address:
Percentage of ownership:

Name:
Position/Title:
Home Address:


Telephone No.:
Email address:
Percentage of ownership:

#### Officers and Directors:

Name:   George Y. Lohmann, Jr.
Position/Title:
Home Address:   3703 Northfield Drive
Midland, TX  79707

Name:
Position/Title:
Home Address:


Name:
Position/Title:
Home Address:

Name:
Position/Title:
Home Address:

EWC-0066