

AMERICAN ARBITRATION ASSOCIATION
Commercial Arbitration Tribunal

EXHIBIT B

In the Matter of the Arbitration between

DOC DEVELOPMENT, LLC,

    Claimant,

v.

EWC Franchise, LLC, a successor-in-interest to
EWC Franchise Group, Inc.,

    Respondent.
_____/

Case Number: Case No. 01-18-0001-3161

## INTERIM AWARD OF ARBITRATOR

I, **GLENN J. WALDMAN**, the undersigned Arbitrator of the American Arbitration Association, having been designated in accordance with the ¶22.7 of the parties' Area Representative Agreement, dated March 24, 2010 ("ARA"), reviewed the evidence and considered the legal arguments at the in-person evidentiary final hearing held Monday, August 19, 2019 through Friday, August 23, 2019 at Fort Lauderdale, Broward County, Florida. During the final hearing, Claimant, DOC Development, LLC ("DOC")[1] was represented by its corporate representative, George Y. Lohmann, Jr., M.D., and its counsel, Jeffrey M. Goldstein, Esq.; and Respondent, EWC Franchise, LLC ("EWC")[2] was represented by its corporate representative and Chief Legal Counsel,

---

[1] DOC is owned and controlled by Dr. George Y. Lohmann ("Dr. Lohmann"). Resp. Ex. 1. In addition to serving as an Area Representative for EWC, DOC owns 75% of a European Wax Center franchise operating within the territory described in the ARA. Tr. at 305:21-24. Dr. Lohmann, through another entity, also owns a second European Wax Center franchise. Tr. at 95: 8-11; 205: 5-12. Neither the operations nor the viability of those franchisees are at issue in this arbitration.

[2] Respondent, EWC is a franchisor which operates and franchises European Wax Center salons throughout the United States. Resp. Ex. 1. European Wax Center's primary business is the provision of waxing services to a predominately female clientele. *Id.*; Tr. at 138:19-139:22; 861:5-11. DOC served as an Area Representative for EWC pursuant to the ARA. Resp. Ex. 1. As discussed, *infra*, EWC terminated the ARA on March 27, 2018. Resp. Ex. 26.

1

Marc Brody, and its outside counsel, Joseph G. Santoro, Esq., Jason M. Murray, Esq. and Meredith Biggs Plummer, Esq. As was stated on the record at the close of the proceedings on Friday, August 23, 2019, the Arbitrator specifically commends the exceptional competence and professionalism of counsel for the parties in the presentation of the evidence and the argument of the parties' respective positions during the proceedings. In reaching the interim findings and conclusions set forth herein, the Arbitrator carefully considered the witness testimony,[3] other deposition testimony, the Exhibits admitted into evidence, the argument of counsel, the parties' October 4, 2019 post-hearing closing briefs (including their competing, proposed Final Awards), and being otherwise duly advised in the premises does hereby **ORDER** and **ADJUDGE** under Florida law, as follows:[4]

The parties have framed and captured the factual details underpinning this dispute in their respective post-hearing closing briefs; thus, the Arbitrator need not replicate them in this Interim Award. However, certain of the salient facts are set forth below in order to explicate the reasoning in this Interim Award. This arbitration originated with DOC's filing of its Demand for Arbitration on March 29, 2018, and its thirty eight-page Amended Exhibit A to Demand for Arbitration on April 10, 2018, in which it asserted eight separate claims - - primarily for breach of the ARA (Count I) and the

---

[3] The following witnesses appeared before the Arbitrator, *seriatim*: Joshua Coba; Dr. Lohmann; Charles Lunden, CPA (DOC's expert witness); Prashant Patel (video and transcript deposition); Robb Thomas; Joely Paschal Contreras (video and transcript deposition); Michelle Marino (telephonic); Tina Narra (telephonic); Pavan Narra, M.D.(telephonic); Roy Adams (telephonic); Kyle Young (telephonic); Tasha Davis (telephonic); and Bruce Schaeffer, J.D., LLM (EWC's expert witness)

[4] Under ¶2.1 of the ARA, "*Except to the extent this Agreement or any particular dispute is governed by the U.S. Trademark Act of 1946 or other federal law, this Agreement shall be governed by and construed in accordance with the laws of the State of Florida. . .* ".

wrongful termination of it by EWC (Count VI).[5] EWC filed its Answer to Claimant's Demand for Arbitration on April 30, 2018 which included and adopted its March 29, 2018 Memorandum in Opposition to [DOC's} Emergency Motion for Temporary Restraining Order in Aid of Arbitration.[6] EWC's Answer denied the material allegation of DOC's Demand and raised eleven Affirmative Defenses, including the legal bar due to DOC's "antecedent breach" of the ARA (see Defense no. 3).

At bottom, this case involves the termination of the ARA on March 27, 2018 in which EWC primarily claimed, *inter alia*, that: (i) DOC failed to provide the "*Support Services*" required under the ARA; (ii) DOC violated the ARA because its managing member, Dr. Lohmann, engaged in repeated sexually harassing and inappropriate behavior directed toward franchisees and their employees; and (iii) DOC failed, after notice, to cure its performance deficiencies and breaches primarily in failing to provide the *Support Services* and then failing or refusing to hire a replacement General Manager as required by the ARA.[7]

The ARA is an ample, comprehensive transaction document which contains several key provisions highly relevant to the Arbitrator's disposition of this dispute. Indeed, the "Recitals"

---

[5]  The remaining six Counts were largely for alternative theories (i.e., breach of the covenant of good faith and fair dealing, breach of a "side" agreement relative to the opportunity to cure the breach(es) of the ARA, unjust enrichment, promissory estoppel / equitable estoppel, tortious interference and conversion).

[6]  DOC's claims against EWC originated in the United States District Court for the Southern District of Florida with the filing of a multi-Count Complaint on March 22, 2018. In that action, DOC filed an Emergency Motion for Temporary Restraining Order and Preliminary Injunction in Aid of Arbitration the same day - - which was heard before District Judge Cecilia M. Altonaga on March 29, 2018. The same day, Judge Altonaga entered an Order denying DOC's Emergency Motion. Eight days later, DOC voluntarily dismissed the case and simultaneously commenced this arbitration proceeding.

[7]  Under ¶5.1 of the ARA, *"[t]he term of this Agreement shall be effective and binding from the date of its execution, and the term of this Agreement shall continue for ten (10) years thereafter, unless sooner terminated as provided in this Agreement."* Under ¶5.2, *"[a]t the end of the initial ten (10) year term of this Agreement, Area Representative may acquire a successor franchise for one (1) additional successive term of ten (10) years, such that the total term shall not exceed twenty (20) years. To qualify for a successor franchise, each of the following conditions shall have been fulfilled and remain true as of the last day of the term of this Agreement."* And, under ¶5.2.4, the *"Area Representative . . . [must not be] in breach or under notification of breach of this Agreement or any other agreement between Area Representative and Franchisor at the time it gives notice of intent to renew."*

includes the following: "*Area Representative understands and acknowledges the importance of Franchisor's high and uniform standards of quality, operations and service and the necessity of operating the Area Representative Business in strict conformity with Franchisor's standards and specifications.*" Under ¶2 of the ARA, "*[the] Franchisor grant[ed] to Area Representative a license to identify and solicit Franchisees within the Territory and to provide Support Services to Franchised Centers located within the Territory subject to the terms and conditions of this Agreement.*" The Territory here included New Mexico, Oklahoma, Louisiana and Texas - - except for the specified counties excluded therefrom as set forth in Schedule 1 to the ARA. And, in connection with the so-called "*Support Services,*" the ARA "Definitions" reveal that: "'*Support Services' means services the Area Representative performs for Franchisor in the Territory as specified in this Agreement and as may be articulated in materials referenced in this Agreement, and which services include Franchisee Solicitation, providing initial and ongoing training and operations assistance, providing ongoing support and conducting periodic quality assurance visits with existing franchisees in the Territory.*" Moreover, ¶4.1.3 of the ARA provided that "*Franchisor reserves the right to require Area Representative to hire a reasonable number of personnel to its staff relative to its ability to provide adequate Support Services to Franchisees. Franchisor may take various factors into consideration in reaching a decision on whether Area Representative is able to provide adequate Support Services, including, the number of prospective Franchisees within the Territory, the number of opened Franchised Centers, **the gravity or frequency of complaints by Franchisees in the Territory and the gravity or frequency of complaints of customers in the Territory**, signed Franchise Agreements within the Territory.*" (e.s.).

The ARA also imposed upon DOC as the Area Representative a variety of vital obligations as they relate to *Support Services* which are generally set forth in ¶8 of the ARA. These include the following:

¶8.6.1.1 *Upon Franchisor's request, Area Representative shall actively participate in, and*

4

*conduct portions of, the ongoing training programs provided to Franchisees in its Territory attending national or regional franchisee conventions, seminars, conferences and/or retreats.*

¶*8.6.1.3 Area Representative* **shall adhere to the operational standards required to be adhered to by all . . . other area representatives**. (*e.s.*).

¶*8.6.2.10 Area Representative acknowledges that it is being delegated certain responsibilities of Franchisor under the terms of the Franchise Agreement between Franchisor and Franchisees within the Territory granted to Area Representative. The responsibilities to be performed by Area Representative are described in this Agreement and/or in the Confidential Operations Manual and may include other reasonable standards and specifications provided by Franchisor from time to time, and the responsibilities to Area Representatives will not materially change during the term of this Agreement. In providing services to Franchisees of European Wax Centers located in the Territory, Area Representative shall in all respects comply with the terms and conditions of any Franchise Agreement or other agreement in effect between Area Representative and Franchisor.* [remainder omitted].

¶*8.10 Area Representative's business shall at all times be under the direct, day-to-day, full-time supervision of a General Manager.*

These provisions - - separately and collectively - - imbue EWC with substantial discretion in its business dealings with DOC. As was explained by several of EWC's witnesses, the delicate and private nature of its business services, coupled with the undisputed fact that the overwhelming majority of its clientele and employees are female, required strict adherence to its operating requirements in order to maintain its reputation and integrity - - and, of course, to continue to grow

5

its franchise brand.[8] Thus, from time to time, EWC was required to exercise its discretion with regard to matters of breach by an Area Representative or Franchisee. Here, with regard to DOC, the ARA resolved all doubt as to the importance of its right to exercise its discretion at ¶11.2 thereof - - *viz*: "*Unless otherwise specifically provided in this Agreement with respect to certain issues, whenever this Agreement requires Area Representative to obtain Franchisor's written consent or permits Area Representative to take any action or refrain from taking any action,* **Franchisor is free to act in its own self-interest without any obligation to act reasonably, to consider the impact on Area Representative or to act subject to any other standard of care limiting Franchisor's right**, *except as may be provided by statute or regulation or this Agreement.*" (e.s.).

Under Florida law, a party's unilateral exercise of discretion is not unbridled. The party exercising the contractual discretion must not act capriciously so as to thwart the other contracting party's reasonable, commercial expectations. *See, e.g., Ernie Haire Ford, Inc. v. Ford Motor Co.*, 260 F.3d 1285, 1291 (11th Cir. 2001) *(citing, Sepe v. City of Safety Harbor*, 761 So.2d 1182 (Fla. 2d DCA 2000) and *Cox v. CSX Intermodal, Inc.*, 72 So. 2d 1092, 1097-98 (Fla. 1st DCA 1999)). The party challenging the exercise of discretion is required ". . . *to show that no reasonable party would have made the same discretionary decision*" under the same circumstances. *Id., citing Sepe*, at 1185. "*[T]he limit placed on a party's discretion is not great.*" *Ernie Haire Ford*, 260 F.3d at 1291-92 (holding that although the appellee's decision was not in appellants' best interests, it was neither capricious nor in contravention of the parties' reasonable expectations). Here, DOC failed to carry its burden that EWC acted so capriciously in the actions it took that the Arbitrator could

---

[8] *See also* ¶¶8.7 and 9.8 of the ARA governing such other discretionary matters as "*honesty, integrity, good faith, fair dealing and ethical conduct*" and to ". . . *adhere to the highest standards of honesty, fair dealing and ethical conduct*"); and ¶16.2.5 ("*The term of this Agreement shall terminate automatically upon delivery of notice of termination to Area Representative, if Area Representative or a holder of a legal or beneficial interest*" . . . *[where EWC's notices to cure, DOC] fails to refrain from activities, behavior or conduct likely to adversely affect the reputation of Franchisor, Area Representative or the System. . .* ".

fairly conclude that no other reasonable party would have exercised the same discretionary decisions.[9]

Again, without repeating all of the facts giving rise to EWC's discretionary decisions, the record does provide ample, credible evidence that (i) for several years prior to the 2017 corporate Summit, DOC employed Joely Contreras, who was the primary point of contact for franchisees in DOC's Territory, and she managed the day-to-day operations of DOC's Area Representative business operations; (ii) even though Ms. Contreras performed *Support Services* required by the ARA, Mr. Thomas testified that he evaluated DOC's performance and determined that DOC's performance was still below promulgated corporate standards; (iii) Ms. Contreras' employment with DOC terminated on or about May 16, 2016; (iv) after Ms. Contreras' termination, Mr. Thomas began receiving various complaints from franchisees regarding DOC and Dr. Lohmann (including that he had engaged in sexual harassment and inappropriate behaviors at their centers and at other EWC events); (v) several of the franchisees in DOC's Territory reached out to Mr. Thomas to

---

[9] Having determined the issue of liability in favor of EWC and against DOC, the Arbitrator need not reach all of the thorny issues both parties raised concerning DOC's claim of damages. Nevertheless, it first bears mention that DOC failed to carry its evidentiary burden here, too. Not only did DOC fail to untangle the complexity that Dr. Lohmann admitted that DOC carries on business to this date in the form of a 75% ownership in an EWC franchise and thus, DOC's business was not entirely destroyed by EWC's conduct, but also DOC failed to demonstrate actual, consistent profitability for the prior eight (8) year term or the remaining two (2) year term. Under Florida law, a party seeking lost profits must show that (1) the lost profits were a direct result of the defendant's actions, and (2) the lost profits can be established with a "reasonable degree of certainty". *River Bridge Grp. V. American Somax Ventures*, 18 So. 3d 648, 650-51 (Fla. 4th DCA 2009). In cases involving an established business, the best and most reliable indicator of future profitability is past performance. *See Brevard County Fair Ass'n, Inc. v. Cocoa Expo, Inc.*, 832, So. 2d 147 (Fla. 5th DCA 2002); *see also, See, e.g., Forest's Men's Shop v. Schmidt*, 536 So.2d 334 (Fla. 4th DCA 1988) (holding that the trial court erred by awarding damages for future lost profits where the business had a history of losses rather than profits); *Daytona Migi of Jacksonville, Inc. v. Daytona Auto. Fiberglass, Inc.*, 388 So.2d 228, 232 (Fla. 5th DCA 1980) ("*In order to recover lost profits, there must be an on-going business with an established sales record and proven ability to realize profits at the established rate.*").

In addition, DOC's damages would have been severely curtailed by operation of ¶22.5 of the ARA ("... **AREA REPRESENTATIVE'S CONTRACT DAMAGES SHALL NOT EXCEED AND SHALL BE LIMITED TO REFUND OF AREA REPRESENTATIVE'S LICENSE FEE AND COMMISSION TO WHICH AREA REPRESENTATIVE MAY BE ENTITLED UNDER THIS AGREEMENT.**"). (*e.s.*).

complain that DOC was providing them with little or no support; (vi) DOC never replaced Ms. Contreras and never hired anyone new to fulfill the management role; and (vii) several of the franchisees in DOC's territory testified they were not receiving adequate support from DOC, both before and after Ms. Contreras' termination - - and the Arbitrator notes that these non-party witnesses were particularly credible and all had no pecuniary interest in the outcome of this proceeding. Tr. at 909:1-6, 910:7 – 912:7, 918:2-22, 933:25 – 934:12, 945:5 – 946:8, 955:8-13, 956:1-16, 957:16-25, 958:18 – 959:5, 986:21 – 987:8, 991:1 – 992:8, 1006:2 – 1007:13. Ultimately, EWC provided, itself, the *Support Services* directly to DOC's franchisees, at its own expense, while DOC continued to receive commissions for *Support Services* it was not performing. Tr. at 738: 11 – 739: 22, 740: 4-22, 912: 14-21, 949: 6-15.

Unfortunately, the evidence concerning Dr. Lohmann's personal behavior cast an awkward pall over this proceeding. The evidence was that EWC received unsolicited complaints from franchisees and others regarding allegations of sexual harassment and inappropriate behavior committed by Dr. Lohmann. Tr. at 705:22 – 706:12, 709:3 – 710:2, 714:8 – 715:9, 716:1 – 717:6, 718:20 – 719:5, 724:9 – 726:8, 727:14 – 728:5, 730:8 – 732:14; Resp. Ex. 36, 37, 38. The undeniable fact is that the complaints about Dr. Lohmann were promptly investigated. Indeed, EWC obtained witness sworn-statements from four individuals who described sexually harassing and other inappropriate behavior by Dr. Lohmann. Resp. Ex. 45-48. Even though Dr. Lohmann sought to rebut the rather consistent charges from multiple witnesses and, in doing so, willingly revealed his otherwise private medical conditions and diagnoses, these matters do not, and obviously cannot, excuse his conduct.[10] His age, experience and considerable intelligence militate against any finding or conclusion that these wrongs can be disregarded by the Arbitrator now, or serve to retrospectively

---

[10] See *Cooper v. Brickell Bayview Real Estate, Inc.*, 711 So.2d 258 n.1 (Fla. 3d DCA 1998), *citing*, *Lerner v. Brin*, 608 So.2d 519, 520 n. 1 (Fla. 3d DCA 1992)(Schwartz, C.J.)(a writ of "*rachmones*" will not lie to avoid the unambiguous provisions of a statute or, as here, the ARA).

thwart EWC's right and responsibility to have acted in its own, best interests.

EWC faithfully followed the notice to cure and termination provisions of the ARA - - which were not immediate. After more than 9 months of attempting to resolve these issues, EWC issued a Notice of Default to DOC on February 7, 2018. See Resp. Ex. 21. 47. After providing DOC with an additional extension of time to cure its noticed violations and deficiencies, EWC issued a Termination Notice to DOC on March 27, 2018. Resp. Ex. 26. Based upon the foregoing, the Arbitrator concludes that EWC properly terminated the ARA. DOC failed to meet its burden of proof as to all of its claims and EWC is consequently not liable for any damages claimed to have been suffered by DOC.

Having determined that Respondent, EWC, is the prevailing party in this proceeding, *Sherman v. Sherman*, 2019 WL 4658446 (Fla. 4th DCA, September 25, 2019), the Arbitrator resorts to ¶23 of the ARA which provides, in pertinent part, that ". . . *the successful or prevailing party will be entitled to recover attorneys' fees, investigative fees, administrative fees billed by such party's attorneys, court costs and all expenses, including without limitation, all fees, taxes, costs and expenses incident to arbitration . . . incurred by the successful or prevailing party in that action or proceeding.*" In this regard, the parties are ordered to "meet and confer" within ten (10) calendar days of the date of receipt of this Interim Award in order to narrow the issues and seek agreement on the amounts in respect of EWC's reasonable attorneys' fees and taxable costs. To the extent issues or disputes remain following such conference, then EWC shall submit to the Arbitrator a Memorandum on the issues (i.e., noting which fees and costs are agreed upon and which ones are not) with all back-up documentation in support thereof. EOC's Memorandum shall be submitted within ten (10) calendar days of the parties' conference. Thereafter, DOC shall submit its opposing Memorandum with ten (10) calendar days of its receipt of EOC's Memorandum. No reply Memorandum will be permitted. No expert witness Affidavits will be required.

In addition to the matter of the final Award of attorneys' fees and taxable costs, the

administrative fees and expenses of the American Arbitration Association and the compensation and expenses of the arbitrator shall be borne by Claimant, DOC, and will be reflected in the Final Award.

This Interim Award is in full settlement of all claims submitted to this Arbitration except the Award of attorneys' fees and taxable costs in favor of EWC which shall be submitted to the Arbitrator in accordance procedures set forth above.

I, **Glenn J. Waldman**, do hereby affirm upon my oath as Arbitrator, that I am the individual described in and who executed this instrument which is my Interim Award.

DATED: October 16, 2019

_____
GLENN J. WALDMAN, ARBITRATOR